[652 NYS2d 329]

In the Matter of JOHN XX., an Incapacitated Person. IRENE XX., as Guardian of JOHN XX., Respondent; BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant; ELIZABETH M. ROSE et al., Respondents.

Third Department, December 26, 1996

## APPEARANCES OF COUNSEL

*Howard Schultz,* Department of Social Services, Binghamton, for appellant.

*Levene, Gouldin & Thompson,* Binghamton *(Kathryn Grant Madigan* of counsel), for Irene XX., respondent.

*Robert E. Leamer,* Binghamton *(Donald P. Carlin* of counsel), for Ideal Senior Center, respondent.

*Robert R. Clobridge,* Binghamton, for Katherine A. Clobridge, respondent.

## OPINION OF THE COURT

MERCURE, J.

By order and judgment entered July 6, 1994, petitioner was appointed guardian of the person and property of her cousin, John XX. (hereinafter John), an elderly man (born in 1915) who suffered a stroke in March 1994. Following the stroke, John was hospitalized and transferred first to a rehabilitation center and then to a nursing home, Ideal Senior Living Center, where he has resided since September 1994. Based upon the medical opinion of John's treating neurologist that John has significant and permanent cognitive dysfunction, Supreme Court found that John "is likely to suffer harm because of his inability to provide for his personal needs and property management and that he is unable to adequately understand and appreciate the nature and consequences of such inability". Supreme Court's enumeration of petitioner's powers included the power "to make reasonable family gifts".

In June 1995, petitioner made application pursuant to Mental Hygiene Law § 81.21 (b) for Supreme Court's approval of her outright transfer of approximately $640,000 of John's assets to his adult daughters, respondents Elizabeth M. Rose and Katherine A. Clobridge. The transfers, intended as a Medicaid and estate planning device to shield the bulk of John's assets from a potential Medicaid lien for the cost of nursing facility services and other medical services, were designed to leave John with approximately $150,000 in assets. Those assets, together with John's annual income from a pension and Social Security (approximately $33,000), were allegedly sufficient for John's reasonable needs during the 36-month

Medicaid look-back period (*see*, 42 USC § 1396p [c] [1] [B]), at the conclusion of which John would rely on Medicaid for the cost of medical care in excess of his income.

The petition was supported by (1) petitioner's statement that, based on her 70-year association with John, she knew that if competent he would choose to make the transfers so as to be eligible to apply for Medicaid while preserving a portion of his estate for his daughters, and (2) John's October 22, 1992 will wherein he provided for distribution of his entire distributable estate to his daughters. Supreme Court's order to show cause provided for service upon respondent Broome County Department of Social Services (hereinafter the Department). The Department and Ideal Senior Living Center opposed the application; the court evaluator indicated that "[i]t does not seem to be in [John's] personal best interest for him to be put in a position where he might end up on welfare" and recommended the appointment of counsel to represent him. Finally, Clobridge submitted an affidavit stating that in her frequent visits she has seen little or no improvement in John's mental capabilities over the time span of his disability. Supreme Court granted the petition without a hearing and the Department appeals.

■ As a threshold matter, we reject Clobridge's present contention that the appeal should be dismissed because the Department is not an aggrieved party within the meaning of CPLR 5511. Supreme Court made specific provision for service upon the Department, presumably pursuant to Mental Hygiene Law § 81.07 (d) (1) (x), which applied to this proceeding by virtue of Mental Hygiene Law § 81.21 (c) (i), and no party raised any issue before Supreme Court concerning the Department's interest in the application. Under the circumstances, the contention has not been preserved for our review.

■ ■ Turning now to the merits, we disagree with the Department's contention that Supreme Court erred in determining the petition without a hearing. First, in view of the fact that the present application came less than one year following petitioner's appointment on unchallenged medical evidence of John's significant and *permanent* cognitive dysfunction and the submission of competent evidence that John's mental disability had not diminished, we conclude that Supreme Court was presented with legally sufficient evidence that John lacked the requisite mental capacity to effect the transfer of funds and was unlikely to regain such capacity within a reasonable period of time (*see*, Mental Hygiene Law § 81.21 [e] [1]). Second, there being little question that, barring

death, John will require continued nursing home care, the cost of which will exhaust his assets, it cannot be reasonably contended that a competent, reasonable individual in his position would not engage in the estate and Medicaid planning proposed in the petition (*see*, Mental Hygiene Law § 81.21 [e] [2]). Finally, although the record contains no evidence of any prior pattern of gift giving, John appears not to have manifested any intention inconsistent with the proposed transfer, and there can be no question that John's daughters are the natural and (as expressed in his will) the actual objects of his bounty (*see*, Mental Hygiene Law § 81.21 [e] [3]).

 Nor are we persuaded that the proposed transfer constitutes a fraud on the Department, as a potential future creditor. Under Federal law, which controls on the issue of penalties to be imposed for a transfer of resources for less than fair market value (*see*, 42 USC § 1396p [c] [4]), a State Medicaid plan must provide for a period of ineligibility for medical assistance when any institutionalized individual makes such a transfer on or after the look-back date (*see*, 42 USC § 1396p [c] [1] [A]). John is an institutionalized individual, and the applicable look-back date is 36 months prior to his application for medical assistance (*see*, 42 USC § 1396p [c] [1] [B] [i], [ii] [I]; *accord*, Social Services Law § 366 [5] [d] [1] [vi]; [3]). During the relevant period, Federal law made no provision for the imposition of any penalty for transfers made prior to the look-back date (*but see*, 42 USC § 1320a-7b [a] [6] [eff Jan. 1, 1997]), with the result that New York may not impose a penalty for John's transfer of resources for less than fair market value if made more than 36 months prior to his application for medical assistance. Although we agree with the Department's central contention that the Medicaid program was not designed to provide medical benefits to those who render themselves "needy" through the use of plans such as that proposed here, the simple fact is that current law rewards prudent "Medicaid planning".

Furthermore, in enacting Mental Hygiene Law article 81, the Legislature gave statutory recognition to the common-law doctrine of "substituted judgment" (Law Rev Commn Comments, reprinted at McKinney's Cons Law of NY, Book 34A, Mental Hygiene Law § 81.21, at 376; *Matter of Florence*, 140 Misc 2d 393) by expressly authorizing the transfer of "a part of the incapacitated person's assets to or for the benefit of another person on the ground that the incapacitated person would have made the transfer if he or she had the capacity to

act" (Mental Hygiene Law § 81.21 [a]). Thus, guardians may be granted the power to make gifts (see, Mental Hygiene Law § 81.21 [a] [1]), to convey or release contingent and expectant interests in property or powers held by the incapacitated person (see, Mental Hygiene Law § 81.21 [a] [3], [4]), or to renounce or disclaim interests in estates (see, Mental Hygiene Law § 81.21 [a] [10]).

In view of the Legislature's express grant of these powers, we agree with the conclusion of a number of lower courts that, subject to the provisions of Mental Hygiene Law § 81.21, guardians have the authority to effect transfers of assets for the purpose of rendering incapacitated persons Medicaid eligible (see, e.g., Matter of Baird, 167 Misc 2d 526, 529-530; Matter of Daniels, 162 Misc 2d 840; Matter of Klapper, NYLJ, Aug. 9, 1994, at 26, col 1 [Sup Ct, Kings County, Leone, J.]). As correctly reasoned by those courts, a contrary conclusion would have the effect of depriving incapacitated persons of the range of options available to competent individuals (see, supra).

The Department's remaining contentions have been considered and found to also be unavailing.

CARDONA, P. J., WHITE, CASEY and CARPINELLO, JJ., concur.

Ordered that the order is affirmed, without costs.