Matter of Forrester (2004 NY Slip Op 50035(U))

Decided on January 29, 2004

Supreme Court, St. Lawrence County
[*1]

Matter of Forrester

2004 NY Slip Op 50035(U)

Decided on January 29, 2004

Supreme Court, St. Lawrence County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

 Digest-Index Classification Incapacitated and Mentally Disabled Persons—Appointment of Guardian for Personal Needs or Property Management Social Services—Transfer of Property to Qualify for Assistance In the Matter of the Application of MARK FORRESTER, Petitioner, for the Appointment of a Guardian for the Person and Property of CARL FORRESTER, Respondent.
Index No. GRD81

Law Office of A. Michael Gebo (Brian K. Goolden, Esq., of counsel), attorneys for Petitioner; William F. Maginn, Jr., Esq., County Attorney; William R. Small, Esq., Court Evaluator.

DAVID DEMAREST, J.
 Before the Court is an application, pursuant to New York Mental Health Law, Article 81, of Mark Forrester ("Petitioner"), seeking appointment of a guardian for Carl Forrester ("Forrester") and

"...in conjunction with said appointment, the authority to protect as much of his uncle's remaining assets through medicaid planning by transferring some of this assets in accordance with a plan..." [developed by Brian K. Goolden, Esq., counsel for petitioner] "...while ensuring that sufficient assets are retained to private pay for his uncle's nursing home care during periods of ineligibility for medicaid nursing home benefits ("penalty periods") that would be created by such transfers." Memorandum of Law, counsel for petitioner, September 23, 2003.
Petitioner has previously been appointed temporary Co-Guardian with his cousin, Betty Riggs. A hearing on the application was held on October 8, 2003, at the St. Joseph's Nursing Home in Ogdensburg, New York, the place of residence of Forrester.[FN1]
[*2]
William R. Small, Esq., Betty Riggs, and Forrester testified. Forrester's impairment and functional limitations affected the extent to which he was able to participate.[FN2] Nonetheless, the Court made personal observations of Forrester, his functional limitations, and heard his responses to questions, permitting it to make its own inquiry. He was unable to independently establish his relationship to the Co-Guardians (a nephew and a niece) or his other niece. Forrester was incapable of discussing his family tree beyond his brother, Elwood (Petitioner's father).
From the pleadings, the report of the Court Evaluator,[FN3] and the testimony at the hearing, the Court makes the following findings:
1) Forrester, an 86-year-old-man, born April 18, 1917, suffers from high blood pressure/hypertension; dementia (according to the report of Dr. Dunn, in consultation with Dr. Kotha, the dementia is not such that Forrester is a danger to himself or others); osteopenia; and had previously suffered a hip fracture.
2) Forrester entered a nursing home for rehabilitation in early 2003, following a hip fracture. For several years prior, Forrester resided with Deborah Miller in a family care home situation arranged by the St. Lawrence Psychiatric Center ("SLPC"), where he had previously been an in-patient. According to Forrester, he was cared for by his brother Elwood during this time. Before his hospitalization, he lived on his own property and worked on his family's farm. No evidence was presented that Forrester would be able to leave the nursing home facility and/or return to a family care home in the near future. His prognosis is "poor" according to the affidavit of Dr. Dunn, his treating physician, dated May 27, 2003.
3) Forrester has no power of attorney, no living will, and no Last Will and Testament. He does have a health care proxy naming Petitioner as health care agent.
4) Forrester's assets include real estate in the Town of Louisville consisting of three (3) parcels: 43.74 acres assessed for $12,400.00; 21.8 acres assessed for $5,500.00; and a third parcel, held on the tax rolls in the name of Myrtle Forrester Estate (apparently the mother of AIP) consisting of approximately .25 acres assessed at $2,300.00, but included in Forrester's assets [FN4]; an unencumbered cash account at Community Bank, NA which at the time of the petition verified June 27, 2003 and the report of the Court Evaluator dated July 24, 2003, was valued in the amount of $220,211.04. Forrester is in receipt of Social Security benefits of $518.00 per month, and VA benefits of $2,193.00 per month.
The Court finds Forrester is incapacitated and the appointment of a guardian of the person and his property is necessary pursuant to Section 81.15(b) and (c) of the Mental Hygiene Law (MHL) upon the following findings:
[*3]
1) Functional limitations impair his ability to provide for his own personal needs and impairs his ability to manage his property;
 2) He has exhibited a lack of understanding and appreciation of the nature and consequences of his functional limitations;
 3) There is a likelihood he will suffer harm because of his functional limitations and inability to adequately understand and appreciate the nature and consequences of such functional limitations;
 4) It is necessary to appoint a guardian of his person and his property to prevent such harm;
 5) The specific powers of the guardian which constitute the least restrictive form of intervention consistent with the findings of this subdivision are set forth herein; and
 6) The duration of the appointment will be for an indefinite period.
The second part of the application is the request by Petitioner for approval to engage in Medicaid planning, which involves transfer of Forrester's assets by the Co-Guardians to themselves and a second niece. The proposed plan and the powers sought to effectuate the plan, are set out at paragraphs 12 through 15(A)-(W) of the Petition dated June 27, 2003. To this end, Petitioner notes that Medicaid planning has been found to be an acceptable and authorized disposition of an incapacitated person's property. See In the Matter of Shah , 95 N.Y.2d 148 (2000)[FN5]; see also In the Matter of John XX, 226 A.D.2d 79 (3d Dep't 1996); and, In the Matter of Kenneth Daniels, 162 Misc. 2d 840 (Supreme Court, Suffolk County, 1994), citing Matter of Klapper, NYLJ, 8/9/94 at p.26, col. 1,2. There is, however, no requirement the guardian engage in Medicaid planning. See MHL §81.21(f).
A guardian of the property is entrusted with the applicable standard of substituted judgment when making property management decisions. [See Matter of Marion Burns, 287 A.D.2d 862 (3d Dep't 2001); and Matter of John XX, 226 A.D.2d 79, 83, lv denied 89 N.Y.2d 814, in which the Court found that the "[L]egislature gave statutory recognition to the common-law doctrine of 'substituted judgment' [citations omitted]"; see also In re the Matter of Shah, 95 N.Y.2d 148 (2000) where the Court added "...the only limitation is that of the doctrine of substituted judgment - the guardian's actions must take in account the personal wishes, preferences, and desires of the [incapacitated] person...citations omitted"].
In reviewing the request to approve the transfer of assets as proposed by Petitioner, the Court is governed by the provisions of MHL § 81.21 which state: "(a) Consistent with the functional limitations of the incapacitated person, that person's understanding and appreciation of the harm that he or she is likely to suffer as the result of the inability to [*4]manage property and financial affairs, and that person's personal wishes, preferences, and desires with regard to managing the activities of daily living, and the least restrictive form of intervention, the court may authorize the guardian to exercise those powers necessary and sufficient to manage the property and financial affairs of the incapacitated person; to provide for the maintenance and support of the incapacitated person, and those persons depending upon the incapacitated person; to transfer a part of the incapacitated person's assets to or for the benefit of another person on the ground that the incapacitated person would have made the transfer if he or she had the capacity to act."[FN6] [emphases added]
The Court has to consider certain statutory factors, found at MHL §81.21(d):
"(d) In determining whether to approve the application, the Court shall consider:

1. whether the incapacitated person has sufficient capacity to make the proposed disposition himself or herself, and, if so, whether he or she has consented to the proposed disposition;

2. whether the disability of the incapacitated person is likely to be of sufficiently short duration such that he or she should make the determination with respect to the proposed disposition when no longer disabled;

3. whether the needs of the incapacitated person and his or her dependents or other persons depending upon the incapacitated person for support can be met from the remainder of the assets of the incapacitated person after the transfer is made;

4. whether the donees or beneficiaries of the proposed disposition are the natural objects of the bounty of the incapacitated person and whether the proposed disposition is consistent with any known testamentary plan or pattern of gifts he or she has made;

5. whether the proposed disposition will produce estate, gift, income or other tax savings which will significantly benefit the incapacitated person or his or her dependents or other persons [*5]for whom the incapacitated person would be concerned; and

6. such other factors as the court deems relevant."[emphases added]
No one is dependent upon Forrester for support. He has no wife nor any children. At this time, Forrester does not have sufficient capacity to make the proposed disposition and his disability is not expected to be of short duration such that he could make the disposition of his assets personally at the end of his disability. He has not previously executed a Will or similar instrument, nor made any significant gifts or established a pattern of gifting. The proposed plan cannot be said to be consistent with any known testamentary plan of Forrester or any pattern of gifting, since neither exist. The proposed plan is not consistent with any earlier acts of Forrester since the proposed beneficiaries never previously received anything of any value from Forrester nor were they promised anything of value from their uncle. The singular proof at the hearing was Co-Guardian Riggs' testimony that, as a young girl, she accompanied her mother to Forrester's farm. She testified that her mother, Forrester's sister Marion, took care of him by visiting regularly, giving things to him, and doing things of value for her Uncle without remuneration [FN7]. Co-Guardian Riggs also testified that while Forrester resided in the SLPC, that entity took care of his financial affairs. There was no proof presented at the hearing with regard to the estate, gift, income, or other tax savings benefits to Forrester or his dependents. Medicaid planning will neither assist Forrester in his personal care at the nursing home nor financially. The plan will serve to divest him of assets to the direct financial benefit of his nephew and two nieces, enabling him to become prematurely Medicaid eligible. The assets, although partially preserved, will not be preserved for his future use, but rather his nieces' and nephew's use.
Petitioner, Co-Guardian Riggs, and Riggs' sister, Bonnie Thomas, are the presumptive distributees of Forrester's estate, as that term is defined in §103(42) Surrogate's Court Procedure Act (SCPA), by virtue of being the surviving children of Forrester's deceased brother and deceased sister.
The Court is required to make a finding, by clear and convincing evidence, that a competent and reasonable person in the same position as Forrester finds himself, would be likely to engage in these transfers as a method of Medicaid planning. Mental Hygiene Law §81.21 (e) requires the Court to find
1. the incapacitated person lacks the requisite mental capacity to perform the act or acts for which approval has been sought and is not likely to regain such capacity within a reasonable period of time or, if the incapacitated person has the requisite capacity, that he or she consents to the proposed disposition;

[*6]2. a competent, reasonable individual in the position of the incapacitated person would be likely to perform the act or acts under the same circumstances; and

3. the incapacitated person has not manifested an intention inconsistent with the performance of the act or acts for which approval has been sought at some earlier time when he or she had the requisite capacity or, if such intention was manifested, the particular person would be likely to have changed such intention under the circumstances existing at the time of the filing of the petition.

The Court must look to whether or not these three relatives are the natural objects of Forrester's bounty. In the Matter of Shah 95 N.Y.2d 148 (2000); In the Matter of Marion Burns , 287 A.D.2d 862 (3d Dep't 2001). By their own statements, confirmed by the report of the Court Evaluator and the testimony at the hearing, all three had little, if any, contact with their Uncle for many, many years. Co-Guardian Riggs recalled last seeing Forrester at Uncle Elwood's funeral, approximately fifteen years ago. She indicated she began visiting Forrester most recently after his placement in the nursing home facility. She advised the Court Evaluator that her Uncle did not know who she was on those visits. Forrester himself asked Riggs at the hearing "...are you a relative of mine?" and then after having been prompted with his deceased sister Marion's name, said that he "...probably did [remember]" Co-Guardian Riggs was his niece because he knew "...she [Marion] had two daughters." Although the Petitioner indicates his father, Forrester's brother Elwood, asked him to take care of Forrester, by his own admission he had no contact with Forrester for at least ten years, despite his own father's death. When interviewed by the Court Evaluator, Forrester did not know where his nephew was, did not mention his late sister's name, nor did he mention his two nieces. The Court is satisfied after listening to and observing Forrester that he does not know Petitioner, Riggs or Thomas, except when prompted to recall his predeceased siblings. It is only then he recalls his sister's and brother's children. There is an absence of proof that Petitioner, Riggs, or Thomas received anything of value from Forrester during their lifetimes. Forrester never indicated to Petitioner, Riggs, or Thomas that he intended to give them anything of value in the future or by way of bequests.
While Forrester affirmatively responded that he did not want the "government" to get his money and his land, there is no clear intention that he intended his nephew and nieces get them either. To be sure, Forrester stated he could take care of himself and his land. Although he testified that he didn't want to give his land away and wanted to keep it for himself, he also testified that gifting it to his nephew and two nieces would "probably be all right I suppose, don't know." He also testified that he would use the money "for what everybody uses it for." When asked if this meant he would use it for his care, he responded "yes". There was no clear and convincing evidence of donative intent. To the contrary, he wanted the land and his assets preserved, stating they belonged to him. It was likewise not clear his nephew and nieces were the natural objects of Forrester's bounty. It has not been established to the satisfaction of this Court that Forrester intended to give his assets away rather than have them available to provide for his [*7]own care, well-being and welfare. The proof presented has not established Forrester ever intended to impoverish himself for the benefit of his nieces and his nephew. Medicaid planning is a permissible function of a guardian, but there is no evidence that Forrester prior to this incapacitation intended to either engage in Medicaid planning or make bequests to his nephew and two nieces.
Subparagraph 2 of 81.21 (b) of the Mental Hygiene Law states that the application must set forth ..."the amount and nature of the financial obligations of the incapacitated person including funds presently and prospectively required to provide for the incapacitated person's own maintenance, support, and well-being". While Petitioner does include a plan for the penalty/transfer period, there is no proof Forrester did not intend to husband the entirety of his assets to provide for his own maintenance, support and well-being in times of sickness and/or old age.
This Court will not read into a guardian's authority the power to use substituted judgment as a blanket presumption to engage in Medicaid planning. This appears to be the position advocated by Petitioner's counsel: every one would rather have his or her money go to family, regardless of who that family member is and what degree of relationship, rather than be used for their own personal care. There is no such presumption in existing law. Nor is one appropriate.
In Matter of Marion Burns, 287 A.D.2d 862 (3d Dep't 2001), an heir, a nephew of the incapacitated person Ms. Burns, appealed Supreme Court's approval of proposed charitable donations. There was no dispute this nephew was Ms. Burns' closest living relative and the presumptive beneficiary of her Will. The Third Department found Ms. Burns wanted to make the donations; she never, at any time, repudiated her plan to make the charitable gifts; she was opposed to having her assets used to pay her expenses at the nursing home but at the same time, she did not necessarily want her assets to go wholly to her nephew upon her death [FN8]. When the guardian moved to confirm the proposed distribution of charitable donations, a hearing was held and the Court found, that although Ms. Burns did not have a full appreciation of her assets, she did affirm her intent to make gifts to the listed charities. The Court said: "In enacting Mental Hygiene Law Article 81, the Legislature gave statutory recognition to the common-law doctrine of 'substituted judgment'" [Matter of John XX, 226 A.D.2d 79, 83, lv denied 89 N.Y.2d 814 (1996)] by expressly authorizing transfers of this kind if it can be shown, by clear and convincing evidence, that these transfers would have been made by Burns during her lifetime if she had the requisite capacity". The Court employed a "standard of reasonableness" in reaching the conclusion that the record of the hearing in Supreme Court established that a "competent and [*8]reasonable individual in Burns' position would likely have performed the same act". The Court also found the record supported its finding: 1) Ms. Burns had not "manifested an intention inconsistent with..." the giving of the charitable donations at a time when she did have the requisite capacity; 2) the gifts were "within her means, would not endanger her ability to be self-supporting"; and 3) the nephew who sought to set aside approval of the charitable donations, while her sole surviving heir, "was not the natural object of her bounty." (emphases added)
This Court adopts similar reasoning as Burns, to reach a different conclusion. Forrester lacks the "requisite mental capacity" to engage in the proposed transfer to effectuate Medicaid planning for which Petitioner seeks approval. He is "not likely to regain such capacity within a reasonable period of time". There is no clear and convincing evidence that "a competent, reasonable individual in the position" of Forrester, "would be likely to perform the act or acts under the same circumstances." There is no clear and convincing evidence that Petitioner, Co-Guardian Riggs, and Thomas were the natural objects of Forrester's bounty. There was no evidence of any kind of donative intent. The evidence presented was that the actions of Forrester (specifically not making any gifts nor indicating to the relatives his intention to make gifts of value) "manifested an intention inconsistent with the performance of the act or acts for which approval has been sought at some earlier time when he or she had the requisite capacity."
The relief sought in the Petition for approval of Co-Guardians for the person and property of Carl Forrester is GRANTED and Mark Forrester and Betty Riggs are appointed Co-Guardians of the person and property of Carl Forrester. The relief sought seeking approval of the proposed transfer of assets of Carl Forrester as outlined by Petitioner, for Medicaid planning, is DENIED. The powers granted the Co-Guardians are those set forth in the Amended Order Appointing Temporary Co-Guardians of the Person and Property, dated September 26th, 2003. Counsel for Petitioner shall submit a proposed Order in accordance with this Decision, on notice to the Court Evaluator and the Co-Guardians.
SO ORDERED
DATED: January 29, 2004, at Chambers, Canton, New York.
 
DAVID DEMAREST, J.S.C.
ENTER:
{Decision & Order, and moving papers filed}
Footnotes

Footnote 1:All persons required to have notice of the Petition in accordance with paragraph one of subdivision (d) of section 81.07 of the MHL received notice of the hearing. In addition, the Court directed notice be given to St. Lawrence County. It participated in the hearing through the County Attorney. 

Footnote 2:In the original Petition, the Petitioner alleged at paragraph #25, that "...no meaningful participation will result from Carl Forrester's presence due to his medical infirmities." The Court Evaluator, however, did suggest that he might be able to participate. 

Footnote 3:The factual statements made in the report of Court Evaluator were either undisputed or unchallenged at the hearing.

Footnote 4:The ownership of this parcel needs to be confirmed prior to any transfer.

Footnote 5:The Shah Decision states "various sources of authority have described transfers for Medicaid planning as being within the scope of the article (see, Matter of John XX, 226 A.D.2d 79, lv. denied 89 N.Y.2d 814, Bailly, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 34A, Mental Hygiene Law §81.21, 2000 Supp Pamp, at 84; see also Russo and Rachlin, New York Elder Law Practice, §5.42, at 229 [1998 ed]. We now confirm a guardian spouse is permitted to effectuate this kind of Medicaid planning on behalf of an incapacitated individual pursuant to MHL 81.21." [emphasis added].

Footnote 6:Transfers made pursuant to this article may be in any form that the incapacitated person could have employed if he or she had the requisite capacity, except in the form of a will or codicil. The powers which may be granted are broad. 

Footnote 7:Co-Guardian Riggs testified without any specificity that Forrester may have gifted money at Christmas to herself and her two cousins when he was managing his own financial affairs.

Footnote 8: Ms. Burns consented to appointment of a guardian of her property. She had previously executed a Last Will and Testament, leaving her estate to her brother, who subsequently pre-deceased her, leaving his son, her nephew, the appellant, who became her sole beneficiary as a result of the anti-lapse provisions. The nephew was entitled to notice of the hearing seeking approval of the gifts, but no notice was given him, and the first appeal resulted in a remand. See Matter of Burns, 267 AD2d 755 (3rd Dept., 1999).