OPINION OF THE COURT
Eugene E. Peckham, J.
In this petition, Sandra, as Mental Hygiene Law article 81 guardian of her uncle, Holland, requests authorization to make gifts from his property to his two living sisters. The original petition was filed on or about September 13, 2005, and an amended petition was filed on March 28, 2006. A hearing was held April 25, 2006.
The original petition requested authority to make gifts of $40,000 apiece to three sisters. The amended petition requests $60,000 apiece to two sisters, the third having died in the meantime. The amended petition also requests that the order authorizing the transfers be made nunc pro tunc to September 13, 2005. The reason for this request is the amendment to the Medicaid laws effective February 8, 2006, which changed the look back period for gifts by Medicaid applicants from 36 to 60 months. (42 USC § 1396p [c] [1] [B] [i], as amended by Pub L 109-171 § 6011 [a], 120 US Stat 4.) This change was adopted in New York by adding a new paragraph (e) to Social Services Law § 366 (5). (L 2006, ch 57, part A, § 50-a [eff July 1, 2006].)
It is clear that a court can authorize a guardian to make gifts on behalf of the incapacitated person. (Mental Hygiene Law § 81.21 [a] [1].) The authority is rooted in the doctrine of substituted judgment whereby a court can substitute its judgment for that of the incapacitated person in making a decision the incapacitated person might have made, if competent. (Matter of Pflueger, 181 Misc 2d 294 [Sur Ct, NY County 1999].) The factors to be considered by the court in exercising substituted judgment are set forth in Mental Hygiene Law § 81.21 (d).
The courts have regularly authorized such gifts and transfers for Medicaid planning purposes. (Matter of Shah [Helen Hayes Hosp.], 95 NY2d 148 [2000]; Matter of John XX., 226 AD2d 79 [3d Dept 1996], lv denied 89 NY2d 814 [1997].) “An underlying rationale in these cases is that since such transfers could be done by competent persons, incapacitated persons should also be able to do so (albeit by a guardian), and not be penalized for their incapacity.” (Matter of Lauda, NYLJ, July 2, 1996, at 31, col 2 [Sup Ct, Nassau County].)
It is equally clear that a guardian can only make such gifts or transfers when given specific authority by the court to do so. *232 (Mental Hygiene Law § 81.21 [a] [1]; Matter of Burns, 287 AD2d 862 [3d Dept 2001].) In the present case the order appointing Sandra as guardian did not include the power to make gifts from the incapacitated person’s property thus necessitating the petition now before the court.
Considering the factors in Mental Hygiene Law § 81.21 (d) Holland does not have the capacity to make the proposed disposition nor is he ever likely to regain such capacity. The proposed donees, his sisters, are the natural objects of his bounty since he has no spouse living, or children. Received in evidence was a copy of the latest will of Holland in which his two surviving sisters are the only beneficiaries, all of the other beneficiaries named in the will having died. However, the testimony established there was no pattern of giving to the sisters, but rather that Holland was a hard worker who saved for retirement and considered it important to pay his own way.
The final factor to consider is whether or not the “needs of the incapacitated person ... for support can be met from the remainder of the assets.” (Mental Hygiene Law § 81.21 [d] [3].) Holland is 91 years old. The testimony and affidavits establish that Holland’s nursing home costs are about $6,500 per month, plus medications and incidental expenses. He receives $558 per month Social Security and about $850 per month in interest income. As of March 25, 2006, he had total assets of $352,023.59 in bank deposits. As can readily be seen his expenses exceed income and his assets will be depleted at a rate of about $5,000 per month or $60,000 per year. It is quite doubtful therefore if his needs can be met over the long term with his assets remaining, after the proposed gifts totaling $120,000.
Additionally, the recent change in the Medicaid laws will cause a 60-month period of ineligibility, which does not start to run until a Medicaid application for Holland is made at some point in the future. (42 USC § 1396p [c] [1] [B] [i], as amended by Pub L 109-171 § 6011 [a], [b], 120 US Stat 4). An application cannot be filed until Holland has exhausted his resources and is thus financially eligible for Medicaid. (Social Services Law § 366.) At present he has too many assets to be eligible. The result is significant doubt as to his ability to pay his bills with his remaining assets due to the unavailability of Medicaid during the period of ineligibility. To be absolutely certain of Medicaid eligibility Holland must retain sufficient assets to pay his bills for five years. (Krooks, Lookback Period Extended to 5 Years, in New Regime in Medicaid—Changes Wrought by the *233 Deficit Reduction Act of 2005, NY St Bar Assn Continuing Legal Education, at A-32 [2006].)
On the other hand if the order were dated September 13, 2005 nunc pro tunc the former Medicaid rules might apply. Under those rules the period of ineligibility would have started to run immediately upon the transfer. (42 USC § 1396p [c] [1] [B] [i], as amended by Pub L 109-171 § 6011 [a], 120 US Stat 4.) A transfer of $120,000 would cause about 20 months of ineligibility from September 5, 2005. Holland would then have $230,000 left and be eligible for Medicaid when that was exhausted.
The problem with such backdating is twofold. First, the new law applies to any “disposal of assets made on or after [the date of enactment].” (42 USC 1396p [c] [1] [B] [i], as amended by Pub L 109-171 § 6011 [a], 120 US Stat 4.) The federal law was effective February 8, 2006. No assets were transferred or disposed of in September, rather the actual disposal will only take place at the present time after the effective date of the federal statute and after the court signs an order to allow it. The New York amendment is effective July 1, 2006, but as previously noted Holland has too many assets to be Medicaid eligible on that date. (Social Services Law § 366 [5], as amended by L 2006, ch 57, part A, § 50-a.)
Second, the court can only sign an order nunc pro tunc to correct ministerial errors. (Siegel, NY Prac § 420 [4th ed].) “[A] court may correct an order to record an existing fact, it cannot record a fact as of a prior date when it did not exist.” (Matter of Carrick, 103 Misc 2d 645, 647 [Sur Ct, Nassau County 1980]; accord, Matter of Gillette, 195 Misc 2d 89 [Sur Ct, Broome County 2003]; Mohrmann v Kob, 291 NY 181 [1943].) The actual disposal of assets did not exist as a fact on September 13, 2005, and the court cannot make it a fact nunc pro tunc. Rather the transfer can only become a fact now, which is after the February 8, 2006 effective date of the new legislation.
The court is aware of the three cases relied upon by petitioner which allowed backdating a gift authorization to the date of application. (Matter of Hagerdorn, 9 Misc 3d 560 [Sup Ct, Monroe County 2005]; Matter of Heller [Ratner], NYLJ, July 28, 1995, at 24, col 5 [Sup Ct, Kings County 1995]; Matter of Lauda, supra.) However, all these cases were not contested by the actual parties in interest, but only the Department of Social Services. In this case the attorney appointed by the court to represent Holland has appeared and filed a brief in opposition to the requested *234 relief. Further, none of the three cases involved a nunc pro tunc order to attempt to avoid the ill effects of a change in the law. For all the foregoing reasons, the court declines to make its order effective nunc pro tunc.
As discussed above, Rolland’s assets will be depleted at a rate of about $60,000 per year, which would be a total of $300,000 for five years. He presently has about $352,000 of assets. Considering Rolland’s age, income and assets, it seems to the court there would be only a slight risk in authorizing the guardian to transfer as a gift $30,000 apiece to his two sisters, Olive and Ruth. This also takes into account the lack of a pattern of giving and Rolland’s desire to pay his own way. The balance remaining of approximately $300,000 should be sufficient to last through the five-year look back period.
Sandra, as guardian of Rolland, is hereby authorized to transfer to Olive and Ruth the sum of $30,000 each from the funds of Rolland.