OPINION OF THE COURT
Joel K. Asarch, J.
An application having been made by Mary E Giordano, Esq., as guardian for the property management of Richard O.M., an incapacitated person, for leave to extinguish his life estate interest in and to certain real property located in Glen Head, New York, in order to facilitate a sale of the subject premises by the estate of Maureen K., which maintains a remainder interest in same, and for the payment of the value of the aforesaid life estate interest to Richard O.M., and upon reading and filing the petition of Mary E Giordano, Esq., duly verified on March 12, 2010; the order to show cause of this court granted on March 22, 2010 directing a hearing on this application; the written appraisals of George J. Brucker, dated June 26, 2009 and March 31, 2010; the affirmation of service of Michelle Lyn Bucalo, sworn to on March 24, 2010; the verified answer of respondent John K.W., Jr., verified on April 15, 2010; the affirmation in partial support and partial opposition of Stephen M. Orsetti, Esq., counsel for respondent Kevin J.K., dated April 16, 2010; and upon the order and judgment appointing guardians, dated July 29, 2008, and the court having thereupon considered said petition then and there presented, and a hearing having been held on April 19, 2010, and attended by the guardian for the property management, Mary E Giordano, Esq.; Maria DeMarco Begley, Esq., on behalf of the petitioner; Stephen M. Orsetti, Esq., attorney for respondent Kevin J.K.; John Newman, Esq., attorney for respondent John K.W, Jr.; Scott A. Smith, Esq., attorney for the Nassau County Department of Social Services; David Ingvoldstad, Esq., attorney for the estate of Maureen K. (remainder interest); and John R. Canney, III, Esq., bankruptcy trustee on behalf of respondent Keith W; and on reading and filing the appraisals and hearing the testimony and recommendations of George J. Brucker, the court-appointed real estate appraiser herein, and it appearing that it is in the best interests of Richard O.M. to have the subject real property sold and to extinguish his life estate therein upon payment of the value thereof, as the said property is currently vacant and is subject to vandalism, waste, and depreciation; and it further appearing *521 that the incapacitated person resides in a skilled nursing facility and is unable to safely return to the community based upon an inability to obtain funding to secure necessary full-time supervision and assistance in his residence; and upon all the aforementioned pleadings and proceedings heretofore had herein; and upon the findings of the court as spread on the record on April 19, 2010; and after due deliberation, it is the decision of the court as follows:
The incapacitated person, Richard O.M., is 95 years of age, having been born on December 8, 1914. On March 1, 2004, the incapacitated person transferred his fee ownership interest in the Glen Head, New York real property in which he resided to his daughter, Maureen K., while retaining a life estate in same. Based upon the date of the transfer, this gift is beyond any applicable “look-back” period for purposes of determining Medicaid eligibility pursuant to the Deficit Reduction Act of 2005.
The parties concede that it was the intention of the incapacitated person, with the consent of two of his grandsons (as heirs-at-law of Maureen K.), for Richard O.M. to remain in the real property for the balance of his lifetime. However, when his funds dwindled, his needs increased, and a third grandchild (who had declared bankruptcy) declined to authorize a reverse mortgage on such real property, the guardians were left with no other option but to permanently relocate the incapacitated person to a skilled nursing facility. Thankfully, he has acclimated well despite his advanced age and severe dementia.
Following the relocation of Richard O.M., the guardian for the property management and the coexecutors of the estate of Maureen K. (to wit: John K.W., Jr. and Donna W.) entered into a contract of sale to extinguish the life estate interest of the incapacitated person and to sell the real property to third parties for the price of $520,000. Based on the written appraisals of George J. Brucker, a New York State certified residential real estate appraiser, spanning a period of nine months, the selling price is approximately $20,000 above the appraised market value.
The court is now faced with two issues — namely, the calculated value of the life estate interest of the incapacitated person in the subject real property, and the extent of his responsibility for necessary closing expenses.
The court has been advised that an application for institutional Medicaid benefits for the incapacitated person was *522 recently approved by the Nassau County Department of Social Services. The court notes that such entity (as the district of financial responsibility for Medicaid benefits) has historically calculated the value of a life estate interest based upon the life estate and remainder interest table promulgated by the Department of Health and Human Services Health Care Financing Administration (the HCFA table). While “[districts may, but are not required, to use this table in calculating the value of life estates and remainder interests” (see NY Dept of Social Servs Administrative Directive 96 ADM-8, at 20), the utilization of this table has been approved by the Appellate Division, First Department when valuing a life estate interest. (See Commissioner of Dept. of Social Servs. of City of N.Y. v Morello, 8 AD3d 154 [1st Dept 2004].)
The HCFA table calculates the value of the life estate interest of Richard O.M. as .22887 of the fair market value (sales price), to wit: $119,012.40 ($520,000 x .22887), and the value of the remainder interest of the estate of Maureen K. as .77113 of the fair market value (sales price), to wit: $400,987.60 ($520,000 x .77113).
Notwithstanding the position of the Nassau County Department of Social Services and the relevant case law, respondent John K.W, Jr., argues that article 4 of the RPAPL should be applied to value the life estate of Richard O.M. (See e.g. RPAPL 403; cf. Matter of Stroke, 5 Misc 3d 1028[A], 2004 NY Slip Op 51592[U] [Sur Ct, Nassau County 2004].) Respondent Kevin J.K. also objects to the HCFA table calculation and instead suggests utilizing IRS tables to value the life estate interest of Richard O.M. Under the latter calculation, Richard O.M. would receive .09259 of the sales proceeds or $48,146.80. Counsel for respondent Kevin J.K. concludes that “for a 95 year old person who is well past his life expectancy, this value is more equitable to both the remaindermen and the life estate,” and characterizes the use of the HCFA table as “absurd” and a “true miscarriage of justice.” It appears that counsel seeks only to minimize the assets to be received by Richard O.M. as a Medicaid recipient — regardless of whether his future Medicaid eligibility would be jeopardized as a result. Neither party suggests any resolution should the institutional benefits of Richard O.M. be interrupted based upon what would be construed by Medicaid as a partially uncompensated transfer.
As stated hereinabove, the incapacitated person gifted a remainder interest in his real property to his daughter in 2004, *523 presumably with the intention of protecting the asset upon his passing. Sadly, Maureen K. predeceased Richard O.M., leaving three surviving grandchildren to vie for their respective shares of the remainder value. The court has not been apprised of any financial contributions made by such grandchildren toward the real property in which their grandfather resided. Nor has the court been made aware of any information that would evidence the intention of Richard O.M. to subjugate his needs to the competing wants of his grandchildren. While their secondary interests as heirs-at-law may be statutorily legitimate, the court must first and foremost guard against any transactions that may negatively impact the eligibility of Richard O.M. to receive Medicaid benefits and to remain at an appropriate skilled nursing facility. Thus, the court will follow the HCFA table to calculate the value of the subject life estate.
The second issue to be addressed concerns the apportionment of closing costs, including real estate brokerage commissions, between the life tenant and the remaindermen. The Nassau County Department of Social Services and the New York State Department of Health have taken the position that any diminution of the gross value of the life estate will trigger an automatic penalty period. When pressed for the authority to support such position, the court’s attention has been directed to 96 ADM-8 (at 19) which states that “[sjocial services districts must use a reasonable method of calculating the value of a life estate, based on the current fair market value of the property and the age of the person.” Because the administrative directive contains no express or explicit offset for closing costs, the Nassau County Department of Social Services argues that no additional costs can be imposed. The court disagrees with this interpretation where the HCFA value is utilized in lieu of an alternate calculation. The section of the directive cited by the Nassau County Department of Social Services (“If the holder of a life estate transfers the life estate during the look-back period, it must be determined if FMV was received for the life use. If FMV was not received, a transfer penalty must be imposed” \id. at 20]) simply requires that fair market value be received by the life estate holder. The directive continues “[i]f an A/R [applicant/ recipient] possessing a life estate sells the life estate interest, the proceeds of this liquidation is a countable resources for purposes of the A/R’s [Medical Assistance program] eligibility.” (Id. at 21 [emphasis added].)
Nowhere in the directive does it state that after such fair market value is received, the court is prohibited from awarding *524 fees from such amount. Nowhere in the directive does it state that a life tenant is absolved of his or her responsibility for the pro rata portion of necessary closing costs. Instead, the Nassau County Department of Social Services focuses solely upon the omission of the qualifier “net” before the word “proceeds” to justify its objection to the payment of any costs from the gross value received for the life estate interest.
But upon closer scrutiny, the directive does allow for the offset of certain mandatory expenses of the life estate holder such as taxes and maintenance, which are deemed to be allowable deductions from gross rental proceeds. Moreover, for the better part of a century, case law has been consistent regarding both the benefits and the duties of a life tenant. While the life estate holder has the right to use and occupy the premises until the extinguishment of the life estate, this privilege is dovetailed with the absolute responsibility of the payment of necessary carrying charges including real estate taxes. “It is a general rule that a tenant for life, since he enjoys the rents and profits of the land, must pay the taxes and make all ordinary, reasonable and necessary repairs required to preserve the property and prevent its going to decay or waste, unless the instrument creating his tenancy expressly provides otherwise” (Matter of Gaffers, 254 App Div 448, 451 [3d Dept 1938] [citations omitted]; see also Matter of Erwin, 277 App Div 378, 384 [1st Dept 1950] [“The usual rule of construction is that a life tenant is obligated to pay for ordinary repairs, insurance, taxes and other carrying charges” (citations omitted)]). Clearly, the nonpayment of these obligations by the life tenant may result in an impermissible encumbrance against the real property which would negatively affect the remainder interest(s). (See e.g. Matter of Fisher, 169 Misc 2d 412 [Sur Ct, Rockland County 2004].)
Finally, the court views the real estate broker’s commission(s) to be a necessary expense which essentially enables the life tenant herein to convert the real property from an intangible ownership interest to an available resource for Medicaid purposes. As it is the custom and practice of this court to approve real estate broker’s commissions in the maximum amount of 4% of the purchase price (barring extraordinary circumstances), the court will permit the guardian for the property management to pay the maximum cumulative sum of $4,760.50 from the funds of Richard O.M. to the real estate broker(s) involved and retained by the estate of Maureen K., such sum representing .22887 of a 4% commission (to wit: $20,800).
*525 For the Nassau County Department of Social Services to demand that Richard O.M. receive the gross proceeds of the life estate without diminution for that which he would otherwise have been responsible as a life tenant is to create an unjustifiable windfall and to impose an unfair burden upon the remainder interest to shoulder the entire administrative cost of the sale while only realizing a portion of the total proceeds.
Thus, the court will permit the guardian for the property management of Richard O.M. to pay his proportionate share of any required transfer tax, any statutorily imposed closing costs, and the broker’s commission (in the maximum cumulative amount of $4,760.50 as stated hereinabove). The guardian for the property management of Richard O.M. shall also be permitted to pay the full amount of any outstanding real estate taxes due on the premises through the extinguishment of his life interest. Conversely, Richard O.M. shall be entitled to the full amount of any closing adjustments in favor of the sellers or responsible for the full amount of any closing adjustments in favor of the purchasers which would ordinarily be the responsibility of the life tenant, including but not limited to any existing fuel credit, and any credit for real estate taxes paid by the sellers at closing. In this way, the rights and obligations of Richard O.M. as life tenant are neither amplified nor lessened, and cause no harm to those entitled to the remainder interest in the subject real property.
Now, on motion of the guardian for the property management, Mary E Giordano, Esq., it is ordered, that the life estate interest of the incapacitated person, Richard O.M., in the premises located at [ ], Glen Head, New York 11545, be and hereby is extinguished conditioned upon the guardian for the property management receiving at closing the total sum of $119,012.40 on behalf of Richard O.M., representing a .22887 interest in the subject real property calculated pursuant to the HCFA table and based upon Richard O.M.’s age of 95 years and a fair market value purchase price of $520,000; and it is further ordered, that the said guardian, Mary E Giordano, Esq., is hereby authorized to execute such documents as are necessary to effectuate the extinguishment of the life estate interest of Richard O.M. in and to the subject premises in accordance herewith, including the execution of a deed to the purchasers, if required; and it is further ordered, that the estate of Maureen K. (as remainderman), be and it hereby is allowed to convey the subject premises free of any life estate interest of Richard O.M. *526 to the purchasers in accordance with the terms of the contract of sale, dated March 9, 2010; and it is further ordered, that prior to the receipt of any consideration, the guardian for the property management shall file a real property bond in this proceeding in the sum of $120,000, to be first approved by a judge of this court; and it is further ordered, that from the gross proceeds of sale, the said guardian, Mary E Giordano, Esq., and the respondent estate of Maureen K. shall each pay the pro rata portions as set forth hereinabove of the necessary closing costs, title charges, liens and mortgages, and transfer taxes, based upon the respective ownership interests of such parties as calculated hereinabove. In addition, the said guardian shall be authorized to pay the full amount of all outstanding real estate charges through the termination of the life estate, and the maximum sum of $4,760.50 from the funds of Richard O.M. as and for his contribution toward any real estate broker’s commission(s) due; and it is further ordered, that Richard O.M. shall be entitled to the full amount of any closing adjustments in favor of the sellers or responsible for the full amount of any closing adjustments in favor of the purchasers which would ordinarily be the responsibility of the life tenant, including but not limited to any credits for fuel charges and real estate taxes paid by the sellers at closing; and it is further ordered, that at or prior to the closing of title, the guardian for the property management shall pay from the funds of the incapacitated person the sum of $750 to George J. Brucker as and for his fee for services rendered as real estate appraiser in preparing the written reports and testifying at the hearing; and it is further ordered, that the guardian for the property management shall pay the maximum sum of $13,800 from the net proceeds of sale received on behalf of Richard O.M. to fund a personal account at Highfield Gardens Care Center for the benefit of Richard O.M.; and it is further ordered, that in accordance with the order and judgment previously issued herein, the guardian for the property management is authorized to conduct discovery proceedings in connection with the alleged “e-Bay” sales and/or disposition of personal property belonging to the incapacitated person; and it is further ordered, that the guardian for the property management shall take such steps as are necessary to forthwith restore the International Union of Operating Engineers death benefit(s) to the prior beneficiary thereof; and it is further ordered, that no later than 30 days following receipt of consideration, the guardian for the property management shall *527 report back to this court for an order confirming the extinguishment of the life estate and for further instructions as to the disposition of the proceeds, including the payment of legal fees and the reimbursement of expenses, if any. Notwithstanding the foregoing, the said guardian is authorized to pay from the net proceeds any outstanding fee(s) previously awarded by the court; and it is further ordered, that in all other respects the motion is denied.