OPINION OF THE COURT
Kathy J. King, J.
Procedural Background
The centerpiece of this guardianship proceeding involves the incapacitated person’s (hereinafter, the IP) former homestead located at 5711 Snyder Avenue, Brooklyn, New York which was transferred by deed without consideration in October 2005 to Marcia Abrams, one of the IP’s four children. At the time of transfer, the property was encumbered by a reverse mortgage. The IP’s son, Philip Abrams, resided with the IP at the time the reverse mortgage was obtained. Philip’s physical access to the IP, coupled with her deteriorating mental condition, led his siblings to believe that he had unduly influenced the IP into obtaining the mortgage. It appears that the real property transfer to Marcia Abrams was motivated, in part, to protect the IP from financial manipulation. Against this backdrop of competing interests, in December 2005, Philip petitioned the court to be appointed guardian of the person and property for Nellie Abrams. The commencement of the guardianship proceeding further exacerbated Philip’s already strained relationship with his sisters who filed opposition to the petition.
After a hearing wherein all parties were represented by counsel, Justice John Leventhal issued an order and judgment dated July 28, 2006 appointing Marcia Abrams as personal needs guardian for Nellie Abrams. Subsequently, by order dated May 15, 2007, the court appointed Dianne Roberts as property guardian. A status conference was then held on July 13, 2007. A review of the record indicates that there was extensive colloquy regarding the status of the IP’s former house resulting in a stip *832 ulation on the record to sell the house, pay off the reverse mortgage with the proceeds of sale, and put the balance of the proceeds into a trust account for the benefit of the IP’s needs. (July 13, 2007 transcript at 8-17.)[1]
On June 16, 2008, Marcia Abrams, as owner of the property, entered into a contract for the sale of the property. However, the buyer’s title insurance company questioned whether title was proper, and requested that all parties to the proceeding sign a stipulation confirming their consent to the sale and the distribution of the proceeds. The sale was aborted due to a disagreement between Philip Abrams and his sisters.
In October 2008, Marcia Abrams moved for an order clarifying the July 13, 2007 agreement made on the record regarding her ownership of the property or her right to sell the property. Upon a hearing on the motion, Justice Michael Ambrosio, who succeeded Justice Leventhal upon his appointment to the Appellate Division, granted an order declaring Marcia Abrams the titled owner of the house and ordering the house to be sold and the proceeds to be “maintained in trust for the benefit of Nellie Abrams during her lifetime after the payment of legal fees and other expenses.” (Ambrosio, J., Dec. 9, 2008.)
On June 29, 2009, the within matter appeared on this court’s compliance calendar since no statutory accountings had been filed as of the commencement of the guardianship.[2] 3**While the 2007 and 2008 annual accountings were eventually filed, at a status conference held on December 21, 2009, the court was advised that the IP had been relocated to New Jersey to live with her daughters. Based on this disclosure and the fact that the Ifi the personal needs guardian, and the IP’s two other daughters reside in New Jersey, the court found that venue would be appropriate in New Jersey, and by order dated March 8, 2010, the court directed Marcia Abrams to commence a guardianship proceeding in New Jersey for the purpose of transferring the within action.
The IP was subsequently placed into a nursing home due to advancing dementia[3] and, in April 2010, Marcia Abrams retained a New Jersey law firm to commence a guardianship proceeding *833 and file a Medicaid application on the IP’s behalf. While the court directed the property guardian to prepare a final accounting in anticipation of winding up the affairs of the estate, by order dated May 7, 2010, the property guardian raised the question as to whether the proceeds from the sale of the property being held in escrow should be included in the final accounting.
Marcia Abrams argued that the funds from the sale of the house are not an available resource in connection with the IP’s Medicaid application since the look-back period, for purposes of the transfer of the house from Nellie Abrams to Marcia Abrams, is three years not five years. Marcia Abrams further claims that she accepted title to the house with the intent of holding the property for the benefit of herself and her three siblings. The court permitted the issue to be briefed.* **[4] At the same time, the court also ordered that the final accounting be held in abeyance pending the determination of this issue.
I. Issue Presented
An applicant’s eligibility for Medicaid is based on whether the applicant transferred any assets within the applicable look-back period. If there has been such a transfer, then the applicant becomes ineligible for a period of time. At issue is what look-back period (the 36-month of the previous law or the 60-month of the new law) applies to the transfer of the house made by the IP to her daughter Marcia Abrams in September 2005 when determining the IP’s eligibility for Medicaid.
II. Discussion
a. Medicaid Program Overview
Medicaid is a jointly funded federal and state medical assistance program established by title XIX of the Social Security Act (42 USC § 1396 et seq.) that is implemented in New York State by title 11 of article 5 of the Social Services Law (Social Services Law § 363 et seq.; see also Matter of Wolf v New York State Dept. of Health, 2010 NY Slip Op 31180[U] [Sup Ct, Nassau County 2010]). The purpose of the program is to “pay for necessary medical care for qualifying indigent individuals, whose *834 income and resources are insufficient to meet the costs of their medical care.” (Matter of Costello v Geiser, 85 NY2d 103, 105 [1995].) Social services departments, when determining an applicant’s eligibility for the Medicaid program, perform an audit (look-back of the applicant’s assets) to identify all uncompensated transfers made by that applicant (Matter of Jennings v Commissioner of N.Y.S. Dept. of Social Servs., 71 AD3d 98, 105 [2d Dept 2010]). Such transfers could result in a penalty or ineligibility for Medicaid assistance. (Id.)
b. Governing Statutes and Regulations
The Deficit Reduction Act of 2005 (hereinafter, DRA) amended the Medicaid laws effective February 8, 2006 (Pub L 109-171 § 6011, 120 US Stat 4). The DRA amended the Federal Social Security Act to state, “The look-back date specified in this subparagraph is a date that is 36 months . . . or in the case of any other disposal of assets made on or after February 8, 2006 [the date of the enactment of the Deficit Reduction Act of 2005], 60 months.” (42 USC § 1396p [c] [1] [B] [i].)
The rules of the State of New York did not change until New York adopted new amendments in its enabling legislation by adding a new paragraph (e) to Social Services Law § 366 (5). (L 2006, ch 57, part A, § 50-a; see Matter of Rolland, 13 Misc 3d 230 [Sup Ct, Tompkins County 2006].) The new law became effective July 1, 2006.
Regulatory guidance on implementation of the new law has been unequivocal in that the new 60-month look-back period applies only to transfers of assets made on or after February 8, 2006. On July 20, 2006, the Health Department issued an administrative directive to all Commissioners of Social Services regarding long-term care Medicaid eligibility and changes under the DRA. (See NY Dept of Health Directive No. 06-OMM/ADM-5 [July 20, 2006].) The directive stated that “[t]he look-back period for transfers made on or after February 8, 2006, is increased from 36 to 60 months for individuals applying for Medicaid coverage of nursing facility services . . . For transfers made on or after February 8, 2006, the look-back period is 60 months for all transfers.” (Id. at 5.)
In Matter of Rolland (13 Misc 3d at 232), the court held that asset transfers made prior to the effective date of the new Medicaid laws are governed by the previous 36-month look-back period. Although the court refused to authorize retroactive gifts from the funds of a 91-year-old incapacitated person to his *835 sisters nunc pro tunc in order to predate the effective date of the Medicaid law change of February 8, 2006, the court did recognize that if a court order were dated September 13, 2005, nunc pro tunc, then the previous 36-month look-back period would apply to such gift. However, since no assets were actually transferred in September 2005, and the actual transfer would only take place after the effective date of the federal statute, the new law’s 60-month look-back period applied. The court ruled that “the new law applies to any ‘disposal of assets made on or after [the date of enactment].’ ” (Id. at 233.) Thus, the actual transfer or disposal date of assets is controlling the determination of which look-back period to apply.
Still other cases also indicate that the date of transfer of assets controls which look-back period applies. The court in Matter of Campbell v Commissioner of N.Y. State Dept. of Health (14 AD3d 766 [3d Dept 2005]) applied a 36-month look-back period to asset transfers occurring after August 10, 1993, but prior to February 8, 2006, when determining a petitioner’s eligibility for medical assistance. In Matter of Rogers v Novello (26 AD3d 580 [3d Dept 2006]), the court applied a 36-month look-back period to three transfers of assets made by an applicant to her children and spouse that occurred in December 2003 and January 2004 when determining the applicant’s eligibility for Medicaid. Lastly, the court in Matter of Giordano (Richard O.M.) (28 Misc 3d 519, 521 [Sup Ct, Nassau County 2010]) held that the date of real property transfer by an applicant to his daughter while retaining a life estate in same determined whether the “gift is beyond any applicable ‘look-back’ period for purposes of determining Medicaid eligibility pursuant to the Deficit Reduction Act of 2005.” There, the Nassau County Department of Social Services found the applicant eligible for Medicaid shortly prior to an April 2010 court hearing after the applicant had transferred his ownership of real property to his daughter on March 1, 2004. (Id. at 522.)
III. Conclusion
Based on the prevailing statutory law and regulations, it is clear that the transfer of the property by the IP to Marcia Abrams is subject to the three-year look-back rules in effect prior to February 2006. Since the IP did not apply for Medicaid until May 1, 2010, the transfer of the house, which took place several months prior to February 8, 2006, is an exempt resource, and thus, would not affect the IP’s eligibility under Medicaid. While the court’s conclusion is consistent with the position *836 argued by Marcia Abrams in her memorandum of law, this court must still determine the intent of Justice Ambrosio’s order which provided that “proceeds of the sale of the house be maintained in trust for the benefit of Nellie Abrams during her lifetime after the payment of legal fees and other expenses.” The memorandum of law submitted on behalf of Marcia Abrams is curiously silent on this issue.
Viewing the facts in the context of the initial application for clarification before Justice Ambrosio provides some guidance as to the court’s intent. The record reveals that the transfer of the real property from mother to daughter was primarily to protect what appeared to be the largest and most valuable asset of Nellie Abrams in order to avoid financial mismanagement and possible waste. Nothing in the record indicates that the transfer was an outright gift which would give rise to a presumption of an intent to transfer ownership and control from the IP to Marcia Abrams, nor could the transfer be construed as an exempt transfer since Marcia neither resided with her mother nor is Marcia disabled. Finally, contrary to the suggestion of Marcia Abrams, there is no dispositive evidence that Nellie Abrams intended to subjugate her interest in the homestead to her four children. (See mem of law at 1, n 1.)
By directing that the proceeds of the sale of the property be maintained in trust for the benefit of Nellie Abrams during her lifetime after the payment of legal fees and other expenses, Justice Ambrosio created a present right for the proceeds of the sale of the property to be used on behalf of Nellie Abrams. The spirit and intent of Justice Ambrosio’s court-imposed mandate is consistent with the statutory purpose set forth in article 81 of the Mental Hygiene Law, which provides for the management of the IP’s financial affairs to provide for the maintenance and support of the IP, and cannot be ignored to sanction a court-ordered transfer of the property to benefit Marcia Abrams and her siblings at the expense of the IP (See Mental Hygiene Law § 81.20.) Accordingly, it is hereby, ordered that the proceeds of sale for the property located at 5711 Synder Avenue, Brooklyn, New York presently held by Andree Slyvestre, Esq. be turned over to Dianne Roberts, Esq., as guardian of the property of Nellie Abrams; and it is further, ordered that the value of said proceeds of sale be included in the calculation of the final accounting; and it is further, ordered that all pharmaceutical bills and health insurance premiums be paid forthwith; and it is further, ordered that a prepaid burial plan be purchased; and it is *837 further, ordered that the property guardian submit an affirmation of services for legal and extraordinary services rendered on behalf of the IP; and it is further, ordered that the firm of Cosner & Cosner submit an affirmation of services representing the balance due on retainer; and it is further, ordered that Marcia Abrams submit a United States Department of Treasury tax bill for capital gains tax imposed for the transfer and sale of 5711 Snyder Avenue, Brooklyn, New York; and it is further, ordered that Peggy Barbanel, Esq., located at 238 Rolling Hill Green, Staten Island, New York 10312, telephone number (718) 625-3323, be and is hereby appointed referee to review the final accounting in the proceedings; and it is further, ordered that a copy of this order and the final accounting of the proceedings be filed with the guardianship department and upon the referee to review the final accounting within 30 days; and it is further, ordered that the referee shall serve and file a copy of her report on all parties and the court within 60 days after receipt of the final accounting; and it is further, ordered that the guardian shall thereafter move on notice to all parties for an order judicially settling the final accounting. Such motion shall contain as exhibits the referee’s report, the final accounting, and a copy of this order, in addition to all affirmation of services. Ordered, that upon review by the guardianship department and this court of the final account, the guardian will then be directed to settle a proposed order settling the final account on notice to all parties with proof of service.

. This verbal agreement was not memorialized in writing, nor did the court issue an order incorporating the intent of the parties.

. The matter had been administratively transferred due to Justice Ambrosio’s reassignment to Family Court.

. While change of abode required the court’s approval pursuant to the order and judgment, the personal needs guardian established that the IP’s medi *833 cal condition required her to be moved from the community to prevent her from becoming a risk to herself and others, thus, the court approves the relocation of the IP nunc pro tunc.

. While Cosner & Cosner were retained to commence the New Jersey guardianship proceeding and to prepare the IP’s Medicaid application, the court permitted Herzefeld and Rubin, as prior counsel, to submit a memorandum of law on the issue.