118 N.J. Super. 436 (1972)
288 A.2d 303
IN THE MATTER OF PATTIE B. TROTT, A MENTAL INCOMPETENT.
Superior Court of New Jersey, Chancery Division.
Decided March 2, 1972.
*438 Mr. John Ferguson, attorney for plaintiffs.
Mr. George Warren, guardian ad litem, pro se.
ALLCORN, J.S.C.
The present proceeding has been brought by American National Bank & Trust of New Jersey, the guardian of this incompetent, jointly with her sole apparent next of kin and heirs at law. It seeks the authority of the court to permit the guardian currently to transfer assets of a value of $100,000 from the principal of the incompetent's estate to the individual plaintiffs by outright gift. In addition, authorization is sought to permit the guardian to make gifts of $3,000 to each of the individual plaintiffs for the year 1971 and for each subsequent year during the lifetime of the incompetent. A guardian ad litem was appointed to represent the interests of the incompetent in this proceeding.
According to the pleadings and the evidence adduced at the hearing, the incompetent is presently 85 years of age and is suffering from a condition which is such that the likelihood of her being restored to competency is extremely remote. She is being cared for in a private nursing home, where the annual cost of her maintenance approximates $10,000. Reference to the Table of Life Expentancy (Appendix I of the Rules Governing the Courts (1969)) indicates that the incompetent has a present life expectancy of 4.71 years.
It further appears that, as of December 31, 1971, the corpus of the estate of the incompetent had a market value in excess of $700,000 and was producing an annual income in the neighborhood of $18,500. Gerrit A. Klop, a vice-president and trust officer of the guardian, testified that by reason of the nature of the securities in which the estate was invested and the type of securities which the guardian contemplated would be transferred to the donees in consummation of the proposed gift of $100,000, the transfer would result in a reduction of income estimated to be only $1,500 annually, at present rates. It was his further opinion that the assets remaining and the income therefrom would be more *439 than adequate to meet amply all conceivable needs of the incompetent until her death.
Mrs. Trott was adjudicated an incompetent by the Essex County Court by order dated April 30, 1971. The most recent will executed by her prior to the onset of her mental incapacity is dated June 24, 1964. Although there also has been found among her papers a codicil dated September 18, 1967, which purports to be a codicil to a will "bearing date the 18th day of September, 1967," it would effect no change in the ultimate distribution of her estate, even if valid.
By the terms of the will of June 24, 1964, the incompetent's entire estate is left outright  one-half to plaintiffs Andrew S. Brazwell III and Walter S. Brazwell (grandchildren of the incompetent), and one-half to the incompetent's daughter, Laura B. Martin. Mrs. Martin has since died and is survived by her two children, plaintiffs Alexander Martin and Pattie Armesto. Hence, inasmuch as the incompetent has no living descendants other than the four individual plaintiffs (and their descendants), only plaintiffs and their descendants can have any interest in the incompetent's estate at her death, N.J.S.A. 3A:3-13 and 14  barring the remote and highly unlikely possibility that the incompetent is survived by none of her grandchildren and their descendants.
Concededly, the principal if not the sole reason for this application is the possible saving of death taxes. Klop estimated that were the proposed gift of $100,000 to be authorized and consummated, the resultant savings on death taxes might amount to as much as $20,000. Thus, the application poses two issues: (1) does the court have the power to authorize a guardian to make a gift of a part of the estate of an incompetent for the purpose of minimizing death taxes, and (2) if so, should such power be exercised under the circumstances here present?
Generally speaking, the powers and authority of the guardian of an incompetent with respect to the administration of the estate of the incompetent are found in N.J.S.A. *440 3A:6-36. That statute charges the guardian to take possession of the incompetent's "real and personal property and see to it that no waste or destruction of his real property is done * * * and [to] apply his personal property and the rents and profits of his real property so as properly to support the * * * incompetent." Within specific and circumscribed limits the court is empowered by statute to authorize the use of the incompetent's assets for the maintenance and support of the incompetent's "household, family, spouse, child or children," N.J.S.A. 3A:20-3, 5, 6 and 10; and where the income of the incompetent's estate is more than sufficient for the proper support of "himself, his household, family, spouse, child or children," the court may also authorize the use of not more than two-thirds of any surplus income for the support or education of the "parents, brothers or sisters" of the incompetent "who are without adequate means of support and dependent on the bounty of others." N.J.S.A. 3A:20-4; In re Groebe, 49 N.J. Super. 111 (Ch. Div. 1958).
Although a review of the applicable statutes discloses no express authority for the guardian of an incompetent to dispose of a portion of the incompetent's estate in the manner here proposed, the power to grant such authorization in a proper case inheres in a court of chancery by virtue of its position as protector and general guardian of all persons under disability. Under the doctrine of parens patriae the court, as representative of the sovereign, may intervene in the management and administration of an incompetent's estate in a given case for the benefit of the incompetent or of his estate. See Johnson v. State, 18 N.J. 422, 430 (1955); State v. Perricone, 37 N.J. 463 (1962); East Paterson v. Karkus, 136 N.J. Eq. 286, 288 (Ch. 1945).
The precise issue here presented has been considered by the courts of a limited number of other jurisdictions. Of them, all but one have reached the conclusion that the court possesses the inherent power to so authorize the guardian and, given the appropriate circumstances, the court will exercise such power. The conclusion is founded upon the thesis that, *441 in the management of the estate of the incompetent, "the guardian should be authorized to act as a reasonable and prudent man would act [in the management of his own estate] under the same circumstances, unless there is evidence of any settled intention of the incompetent, formed while sane, to the contrary." In re Guardianship of Christiansen, 248 Cal. App.2d 398, 56 Cal. Rptr. 505, 521 (D. Ct. App. 1967). Cf. Potter v. Berry, 53 N.J. Eq. 151 (E. & A. 1895).
As succinctly stated by the California court:
It is concluded that the courts of this state, in probate proceedings for the administration of the estates of insane or incompetent persons, have power and authority to determine whether to authorize transfers of the property of the incompetent for the purpose of avoiding unnecessary estate or inheritance taxes or expenses of administration, and to authorize such action where it appears from all the circumstances that the ward, if sane, as a reasonably prudent man, would so plan his estate, there being no substantial evidence of a contrary intent. [56 Cal. Reptr. at 522-523]
Accord: In re DuPont, 41 Del. Ch. 300, 194 A.2d 309 (Ch. 1963); In re Morris, 281 A.2d 156 (N.H. Sup. Ct. 1971); In re Carson, 39 Misc.2d 544, 241 N.Y.S.2d 288 (Sup. Ct. 1962); In re Groff Estate, 38 Pa. Dist. & Co. R.2d 556 (1965). Cf. In re Johnson, 111 N.J. Eq. 268 (Ch. 1932); In re Brice's Guardianship, 233 Iowa 183, 8 N.W.2d 576 (Sup. Ct. 1943); In re Buckley's Estate, 330 Mich. 102, 47 N.W. 2d 33 (Sup. Ct. 1951); In re Trusteeship of Kenan, 262 N.C. 627, 138 S.E.2d 547 (Sup. Ct. 1964). Contra: In re Neal, 406 S.W.2d 496 (Tex. Civ. App. 1966).
In still another jurisdiction (Massachusetts) legislation has been adopted specifically empowering the court to authorize a guardian "to apply such funds as are not required for the ward's own maintenance and support towards the establishment of an estate plan for the purpose of minimizing current or prospective state or federal income, estate and inheritance taxes in the ward's estate or for gifts to such charities, relatives and friends as would be likely recipients of donations from the ward." (Mass. Stat. 1969, c. 422).
*442 In a case brought pursuant to that statute, in which an incompetent's guardian sought authority to make gifts out of the incompetent's property consisting of $33,000 to the guardian herself (she being the only child of the incompetent) and $3,000 each to the two daughters and four granddaughters of the guardian, the Supreme Judicial Court of Massachusetts upheld the constitutional validity of the statute. Strange v. Powers, 260 N.E.2d 704 (1970). The court found, further, that even though the statute contained no express authority therefor, the guardian herself properly could be the recipient of a gift. After a review of various of the decisions in other jurisdictions, the court stated:
We agree with the modern trend of cases both in England and in the United States. There is no reason why an individual, simply because he happens to be a ward, should be deprived of the privilege of making an intelligent commonsense decision in the area of estate planning, and in that way forced into favoring the taxing authorities over the best interests of his estate. * * * [at 709]
See also, Annotation, "Power to make charitable gifts from estate of incompetent," 99 A.L.R.2d 946 (1965); Annotation, "Power of court or guardian to make noncharitable gifts or allowances out of funds of incompetent ward," 24 A.L.R.3d 863, § 16 at 901 (1969).
The reasoning and the conclusion of the majority are most persuasive and compelling, logically and legally. This court is in complete accord with both, and subscribes to the rule as stated by the California District Court of Appeals in Christiansen, set forth above.
The remaining issue  i.e., whether the court should exercise its power in this case so as to grant to the guardian the authority to make the gifts proposed  likewise must be answered in the affirmative. The factual situation here more than satisfies each of the qualifying criteria: (1) the mental and physical condition of the incompetent are such that the possibility of her restoration to competency *443 is virtually nonexistent; (2) the assets of the estate of the incompetent remaining after the consummation of the proposed gifts are such that, in the light of her life expectancy and her present condition of health, they are more than adequate to meet all of her needs in the style and comfort in which she now is (and since the onset of her incompetency has been) maintained, giving due consideration to all normal contingencies; (3) the donees constitute the natural objects of the bounty of the incompetent by any standard  not only do they compose her sole existing primary descendants, but at this moment, if they survive, they are in fact the only beneficiaries who will share under her will (two of them having been specifically designated, and the other two succeeding to the interest of their deceased mother, the designated beneficiary of the remaining one-half);[1] (4) the transfer will benefit and advantage the estate of the incompetent by a reduction of death taxes; (5) there is no substantial evidence that the incompetent, as a reasonably prudent person, *444 would, if competent, not make the gifts proposed in order to effectuate a saving of death taxes.[2]
Accordingly, the guardian is authorized to transfer currently to each of the four individual plaintiffs out of the assets of the estate of the incompetent, the sum of $25.000. In addition, approval is hereby given to transfer to each of said plaintiffs of the sum of $3,000 for the year 1971 (heretofore transferred); the sum of $3,000 during the year 1972; and the sum of $3,000 during the year 1973  provided the incompetent is still living at the time of the respective transfers and the annual individual gift tax exemption under federal law is not reduced below $3,000 annually, per individual donee. Jurisdiction will be retained so that the guardian may apply for authority to make additional gifts for the year 1974 and succeeding years should the incompetent survive and should circumstances then extant warrant the making of such application.
NOTES
[1] In passing it should be noted that the court recognizes that the persons who constitute the beneficiaries of the incompetent's estate at the time of her death may well not be the same as those who today are the beneficiaries apparent, depending upon whether the latter survive the incompetent; and, consequently, that any distribution of the incompetent's assets such as is currently proposed may result in a devolution of said assets different from that which will occur on the death of the incompetent.

The sole person in interest here is the incompetent. The exclusive concern of the court in this proceeding is the benefit and advantage of the incompetent and her estate. And if, as here, the court concludes that the incompetent, as a reasonably prudent competent person, would have made the gifts proposed in order to minimize death taxes, the remote, contingent expectation of the substitutionary beneficiaries cannot be permitted to frustrate this reasonably probable act of the incompetent. Just as the expectancy of any possible or probable beneficiary of a competent person is subject to complete or partial defeat as the result of the act of that person during his lifetime, so here. Cf. R. 4:26-3, and Tentative Draft Comment thereon; In re Trusteeship of Kenan, 262 N.C. 627, 138 S.E.2d 547, 554 (Sup. Ct. 1964). Compare, 3 Restatement, Property, "Future Interests," § 315 (1940).
[2] Compare the criteria as set forth in chapter 422 of Massachusetts Statutes of 1969:

The conservator or guardian in his application shall briefly outline the proposed estate plan, what it may accomplish and the likely tax savings to accrue. The plan may include gifts of the ward's personal property or real estate, but transfers of real estate shall be subject to the requirements of chapter two hundred two. Gifts may be for the benefit of prospective legatees, devisees or heirs apparent of the ward or may be made to individuals or charities in which the ward is believed to have an interest. The conservator or guardian shall also indicate in the application that any planned disposition is consistent with the intentions of the ward insofar as they can be ascertained, and if the ward's intentions cannot be ascertained, the ward will be presumed to favor reduction in the incidence of the various forms of taxation and the partial distribution if his estate as herein provided. The conservator or guardian shall not, however, be required to include as a beneficiary any person whom he has reason to believe would be excluded by the ward.