714 A.2d 335 (1998)
314 N.J. Super. 140
In the Matter of Manuel L. LABIS, an Alleged Mental Incompetent.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1998.
Decided July 21, 1998.
Donald M. McHugh, East Hanover, for appellant Myrna Labis (McHugh and Macri, attorneys; Mr. McHugh, on the brief).
Michael D. Bolton, Morristown, for respondent Manuel L. Labis.
Before Judges LANDAU, NEWMAN and COLLESTER.
The opinion of the court was delivered by COLLESTER, J.A.D. (temporarily assigned).
Myrna R. Labis, hereinafter "Myrna," appeals from an order of the Law Division denying her the authorization as guardian for her incompetent husband, Manuel, for an interspousal transfer of his interest in the marital home held as tenants by the entirety.
On October 3, 1996 Manuel suffered a subarachnoid hemorrhage, a devastating stroke which resulted in permanent brain damage. Now age sixty-five, his condition is grievous. He is bedridden, permanently paralyzed on the right side and unable to swallow on his own. He cannot communicate, follow directions, or answer questions, and is mentally incompetent.
*336 Until recently, at a cost of $10,000 per month, he was treated at the Morris Hills Multicare Center where Myrna visited him every day. She has currently taken leave of her employment so that Manuel could temporarily return to their East Hanover home. Manuel requires constant care. There is no question that, barring death, he will soon require long-term care at a nursing home or institutional facility and that a Medicaid application will at some point be filed to pay for the cost of care.
Before his stroke, Manuel and Myrna lived in the marital home and raised and educated two sons. Both are now emancipated: one, age twenty-seven, is an architect, and the other, age twenty-five, is an engineer. Both Manuel and Myrna are certified public accountants and worked full time. They pooled their earnings, for purchase in 1977 of their home, and they have jointly maintained their home as well as paid for the private college and graduate school education of their children. Myrna's current salary is about $40,000 when she works full-time. Manuel receives social security disability of $1,010 per month in addition to a small early retirement pension. Their joint annual income has been reduced significantly since Manuel's stroke. Myrna is fifty-seven and plans to continue working full time as long as she is able.
The joint and individual assets of the marital estate exclusive of the home total about $100,000. The East Hanover property has an estimated value of $224,000 less a $46,000 mortgage and has carrying costs of $16,000 per year inclusive of taxes, insurance, maintenance and utilities. Manuel and Myrna have reciprocal wills, leaving his or her assets to the other spouse and thereafter equally to their children.
On March 27, 1997 Myrna filed a complaint seeking appointment as guardian for Manuel and in addition, the authority to undertake Medicaid estate planning measures on behalf of Manuel including the interspousal transfer of the marital home. The Law Division judge entered an order declaring Manuel mentally incompetent and appointing Myrna as his guardian, but he denied the request authorizing the interspousal transfer, setting forth the following reasons:
[t]he incompetent is likely to require long term maintenance in a nursing home facility. His resources are limited and he will likely be supported at public expense for a long time. An effort should be made, in the public interest, to preserve some of his assets, in some way to make it possible to repay a portion of the public expense in supporting the incompetent. His wife may continue to live in the home which they own as tenants by the entirety. If the incompetent dies before his wife, she will obtain the entire interest in the house and may keep it. If the wife wishes during the joint lives of the parties to sell the home so that she can obtain her fair share of the equity, I will allow that, but I will require that some part of the equity be retained to meet the incompetent's obligation to the public. It is not fair to the public to transfer the home to her sole name during the joint lives of the parties free of any interest of the incompetent (and the public). Such a transfer might result in a situation in which she predeceases the incompetent and leaves the house to the parties' adult children free of the claims of the public. This would be unjust.
Myrna contends that both Federal and State Medicaid laws as well as public policy authorize interspousal transfers, that the transfer is both appropriate and permissible under the substituted judgment doctrine applicable to guardians and that the trial judge's refusal to permit such a transfer discriminates against Manuel as an incompetent in violation of the equal protection clause.
Counsel appointed to represent the interest of Manuel does not dispute that interspousal transfers are permitted but argues that, as Manuel's fiduciary, Myrna should not be permitted to transfer his interest in the marital home to herself because such a transfer could benefit the couple's children at the potential cost of the quality of Manuel's care.
We reverse. The Law Division judge denied the relief sought on an erroneous view that the proposed interspousal transfer was contrary to public policy, and thereby failed to consider that the interspousal transfer would benefit Manuel in carrying forth his *337 probable actions if he were competent to address the situation.
In order to qualify for Medicaid, fifty percent of Manuel's estate is deemed for spend down prior to eligibility, which in this instance would be $50,000 exclusive of his interest in the marital home. Myrna would have her deemed share of $50,000 and the right to live in the marital home with responsibility for carrying costs. Given her actuarial lifetime of 25.31 years, there is no illusion that this "Community Spouse Resource Allowance" will sustain her until then. Her economic survival in her declining years is directly tied to the sale of the marital home.
The Federal Medicaid legislation requires that a state must provide for a period of Medicaid ineligibility when an institutionalized individual or spouse disposes of assets for less than fair market value on or after the look-back date of thirty-six months before the application for medical assistance. 42 U.S.C.A. § 1396p(c)(1)(A); 42 U.S.C.A. § 1396p(c)(1)(B)(i). However, Medicaid law recognizes that it would be contrary to public policy to force the "community spouse" to utilize all the combined marital assets for the support of the institutionalized spouse so as to result in the impoverishment and public support of both spouses. 42 U.S.C.A. § 1396r-5(d). Accordingly, the "Community Spouse Resource Allowance" provisions divided spousal property pursuant to "deeming rules," and there is a "Monthly Maintenance Needs Allowance" for the community spouse. 42 U.S.C.A. § 1396r-5(f). There is also no Medicaid lien or claim upon the marital home as long as the community spouse continues residence. 42 U.S.C.A. § 1396p(a)(2)(A).
Significant to this case is the additional spousal protection provision that there is no ineligibility for Medicaid medical assistance to an institutionalized person who transfers his or her equity interest in a home serving as a principal place of residence to a spouse. 42 U.S.C.A. § 1396p(c)(2)(A)(i); N.J.A.C. 10:71-4.7(d). For this reason transfer of an institutionalized person's interest in the marital home is a common Medicaid and estate planning strategy. See generally, Debora C. Fliegelman, Giving Guardians The Power to do Medicaid Planning, 32 Wake Forest L.Rev. 341, 361 (1997); see also, In Re Guardianship of Connor, 170 Ill.App.3d 759, 121 Ill.Dec. 408, 525 N.E.2d 214, 216 (1988) (failure of guardian bank to sell residential real estate prior to Medicaid application resulting in loss of medical benefits constituted a breach of fiduciary duty requiring reimbursement to ward's estate).
Other jurisdictions have held that Medicaid planning can be effected for an incompetent through substituted judgment exercised by a guardian. In Re John "XX", 226 A.D.2d 79, 652 N.Y.S.2d 329, 332 (1996), leave to appeal denied, 89 N.Y.2d 814, 659 N.Y.S.2d 854, 681 N.E.2d 1301 (1997), permitted a guardian to transfer the assets of an elderly, mentally incapacitated ward to his adult children in order to qualify the ward for Medicaid and accomplish estate planning objectives, stating that the contrary result would deprive incapacitated persons of the range of legal options available to competent individuals. See also, In Re Baird, 167 Misc.2d 526, 634 N.Y.S.2d 971, 974 (Sup.Ct.1995); In Re Daniels, 162 Misc.2d 840, 618 N.Y.S.2d 499, 500-04 (Sup.Ct.1994).
A similar analysis was employed by the Wisconsin Supreme Court in In Re Guardianship of F.E.H., 154 Wis.2d 576, 453 N.W.2d 882, 888 (1990) in which the court considered the issue of whether the co-guardians of a married ward, one of whom was his wife, could transfer his interest in the jointly owned marital home to the wife so that if she pre-deceased her husband the home would be shielded from recovery for Medicaid payments made on behalf of the ward. The court concluded that the Wisconsin Legislature had expressed through its Medicaid statute and regulations that it was "sound public policy" to forego the possible use of a homestead as an asset available to pay for or to reimburse the state for the medical care and maintenance of an institutionalized person in favor of preserving the homestead for the institutionalized person's spouse. Id. 453 N.W.2d at 888-89.
The common law equitable doctrine of substituted judgment encompasses the view that a court has inherent power to deal with the estate of an incompetent in the same manner as the incompetent would if able to *338 function at full capacity. It was applied in the New Jersey decision of In Re Trott, 118 N.J.Super. 436, 442-43, 288 A.2d 303 (Ch. Div.1972) which held that a guardian was permitted to make gifts to the incompetent's grandchildren to reduce the taxes to be paid from the incompetent's estate upon her death. Id. at 444, 288 A.2d 303. Noting that the predecessors of the current guardianship statute did not contain an express grant of such authority, the Trott court held that courts of this State had the inherent authority to authorize actions including transfers of property as a reasonable prudent man would plan to avoid unnecessary state or inheritance taxes. Id. at 440-41, 288 A.2d 303. See also, In Re Guardianship of Christiansen, 248 Cal.App.2d 398, 56 Cal.Rptr. 505, 522-23 (1967). The court indicated the following criteria to be considered in making such a decision:
(1) the mental and physical condition of the incompetent are such that the possibility of [his or] her restoration to competency is virtually non-existent; (2) the assets of the estate of the incompetent remaining after the consummation of the proposed gifts are such that, in light of [his or] her life expectancy and [his or] her present condition of health, they are more than adequate to meet all of [his or] her needs in the style and comfort in which [he or] she now is (and since the onset of [his or] her incompetency has been) maintained, giving due consideration to all normal contingencies; (3) the donees constitute the natural objects of the bounty of the incompetent...; (4) the transfer will benefit and advantage the estate of the incompetent by a reduction of death taxes; (5) there is no substantial evidence that the incompetent, as a reasonably prudent person, would, if competent, not make the gifts proposed in order to effectuate a saving of gift taxes.
[Id. at 442-44, 56 Cal.Rptr. 505 (footnotes omitted).]
Title 3B of New Jersey Statutes has incorporated the concepts of Trott. The duties and powers of a guardian of a mentally incompetent person are set forth in N.J.S.A. 3B:12-57. They include, without limitation, providing "for the care, comfort and maintenance of his ward," consenting to or approving medical or other professional care for the ward, and conserving the excess of the ward's estate over that which is necessary to provide for the ward's current support needs. N.J.S.A. 3B:12-57(b), -57(c) and57(e). Transfer of property and outright gifts are permissible in the best interests of the ward and consistent with actions he might have been expected to take. N.J.S.A. 3B:12-49, -50, -57 and -58.
Concepts of equal protection and inherent fairness dictate that an incompetent should be given the same opportunity to use techniques of Medicaid planning and estate planning as others more fortunate. Since Federal and New Jersey Medicaid laws permit interspousal transfers of the marital home, a guardian may effectuate such a transfer provided that complies with the best interest of the ward inclusive of his desire to benefit the natural objects of his bounty.
In the instant case the sad fact is that Manuel suffered permanent brain damage and that his restoration to competency is non-existent. Myrna and ultimately the two sons are the natural and actual objects of Manuel's bounty as evidenced by his will, and transfer of Manuel's interest in the home to Myrna at this time will shield it from a Medicaid lien to the ultimate benefit of the objects of his bounty. Counsel appointed to represent Manuel raises the concern that the interspousal transfer would deprive him of private funds that could enable placement in a better nursing home or a better quality of care. The plan suggested by Myrna would involve use of $50,000 of personal assets to be paid to a quality nursing home as a spend-down prior to the implementation of Medicaid.
The request for authority for the interspousal transfer is a reasonable method to effectuate Medicaid and estate planning in these circumstances. We can safely assume by his will that if Manuel were competent, he would take every lawful and reasonable action to minimize obligations to the State of a nursing home in order to secure the maximum amount available to support his wife of *339 twenty-seven years through the remainder of her life and benefit his children thereafter.
N.J.S.A. 3B:12-49 and 3B:12-50 permit a court to allow a guardian to exercise powers over the ward's estate which the ward could and would exercise if not under a disability. We hold that the request of the guardian is within those enumerated statutory powers and that the court should authorize the guardian to take appropriate action that the incompetent would have taken if he were of sound mind. See Marsh v. Scott, 2 N.J.Super. 240, 246, 63 A.2d 275 (Ch.Div.1949).
Reversed and remanded for an order consistent with this opinion permitting the interspousal transfer of the marital home to the guardian and the escrowing of $50,000 of the marital estate for spend-down at a quality nursing home to be selected by the guardian.