# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1289-18T4

IN THE MATTER OF
KATHLEEN M. HOURIHAN,
An Incapacitated Person.

_____

Argued October 3, 2019 – Decided August 27, 2020

Before Judges Fuentes, Mayer, and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. P-000322-18.

Andrew John DeMaio argued the cause for appellant Marianne Phillips, Guardian (Neff Aguilar LLC and John Joseph Marinan, attorneys; Andrew John DeMaio and John Joseph Marinan, on the brief).

Respondents have not filed briefs.

PER CURIAM

In an order of judgment dated December 13, 2013, the Chancery Division, General Equity Part in the Monmouth County Vicinage declared Kathleen Hourihan an incapacitated person and appointed her nieces, plaintiff Marianne Phillips and her sister Kathleen Gunyan, as co-Guardians of her estate. At the

time the court made this decision, Hourihan was seventy-nine years old and had been diagnosed with Alzheimer's, psychosis, depression, mood disorder, and coronary heart disease. She resided at an assisted-living facility; she never married and did not have any children.

Hourihan's estate was valued at approximately $3,000,000, and her annual income exceeded her living expenses. Thus, the court ordered plaintiff and Gunyan each to post a surety bond in the amount of $3,000,000 as a condition of their guardianship. On May 2, 2014, the court amended the judgment and appointed plaintiff as sole Guardian due to Gunyan's inability to post the required $3,000,000 surety bond.

On February 13, 2008, Hourihan executed a Last Will and Testament (Will) naming her nieces, plaintiff and Gunyan, and Elizabeth Daly, a sister-in-law of the nieces, residual heirs of her estate in equal parts. Plaintiff and Gunyan were designated co-executors of her estate. On September 18, 2018, plaintiff filed a verified complaint in the Monmouth County Chancery Division, General Equity Part seeking nunc pro tunc approval of monetary gifts she made from Hourihan's estate between 2015 and 2017 to the direct beneficiaries of the Will, including herself; Gunyan; and Daly, and other family members who were only considered contingent beneficiaries to the Will, including her husband, two

daughters, and son-in-law. The total amount gifted from the Will during this three-year period was $450,000.

Plaintiff's complaint came before the court unopposed. After hearing oral argument and reviewing the record, the General Equity judge granted plaintiff's application in part and denied it in part. The judge held that pursuant to a power of attorney, which Hourihan executed before she was declared legally incapacitated, plaintiff was authorized to gift $14,000 per year to each of the individuals Hourihan identified as direct beneficiaries in her will. This amount is the maximum per person yearly tax-free monetary gift permitted by the Internal Revenue Service (IRS). The judge disallowed the gifts plaintiff made to individuals who were identified in the Will only as contingent beneficiaries.

Those individuals who received gifts based on their status as contingent beneficiaries in Hourihan's Will were ordered to repay to the estate the entire amount of the gift. Those recipients who were identified in the Will as direct beneficiaries were ordered to repay the estate the amount of the gifts that exceeded the yearly maximum per person tax-free gift limit established by the IRS. The judge granted plaintiff's motion to stay the execution of her order requiring the repayment of the gifts pending the outcome of this appeal.

A-1289-18T4

In this appeal, plaintiff argues the General Equity Part erred when it: (1) restricted her ability to make gifts only to those individuals expressly named as direct beneficiaries of Hourihan's Will; (2) limited the gifts to those entitled to receive it to the maximum tax-free gift amount per year established by the IRS; and (3) required repayment of any gifts made to the direct beneficiaries in excess of the $14,000 tax-free gift limit established by the IRS. We reject these arguments and affirm.

I.

Hourihan was eighty-four years old at the time plaintiff brought this matter before the General Equity Part. In June 2006, Hourihan signed a power of attorney appointing plaintiff as her Attorney-in-Fact. The power of attorney permitted plaintiff to make gifts to the "natural objects of [Hourihan's] bounty," so long as "the total gifts to any one individual in any one calendar year [do not] exceed the federal gift tax annual exclusion in effect at the time of such gift[.]" On February 13, 2008, Hourihan signed her Will and named Gunyan, plaintiff, and Daly as direct beneficiaries of her residual estate "in equal shares, share and share alike." If either of the named beneficiaries were to predecease Hourihan, the beneficiary's share would pass per stirpes to the beneficiary's heirs.

Hourihan's investment assets estate consisted of wealth management and checking accounts held in PNC and Wells Fargo Wealth Management Accounts. These assets amounted to approximately $3,000,000. In the three years at issue here, Hourihan's income substantially exceeded her living expenses. Her net income in 2015 exceeded expenses by $125,042; her income exceeded her expenses in 2016 by $85,587; and her income exceeded her expenses in 2017 by $124,072. On September 18, 2018, plaintiff submitted a sworn certification to the General Equity Part in support of her application for judicial approval of the gifts. The certification provides, in relevant part:

> For Estate Planning purposes, gifts were made for 2015-2017, in the amount of $150,000.00 in total, per year, with each of the beneficiaries of Kathleen's Estate receiving $50,000.00, net, per year, as follows:
>
> 2015
> a) $50,000.00 to Marianne Phillips, by and through her designated donees
> b) $50,000.00 to Kathleen Gunyan
> c) $50,000.00 to Elizabeth Daly
>
> 2016
> a) $50,000.00 to Marianne Phillips, by and through herself and her husband, Stephen Phillips
> b) $50,000.00 to Kathleen Gunyan
> c) $50,000.00 to Elizabeth Daly
>
> 2017
> a) $50,000.00 to Marianne Phillips, by and through herself and her husband, Stephen Phillips

b) $50,000.00 to Kathleen Gunyan
c) $50,000.00 to Elizabeth Daly

These gifts totaled $450,000 over this three-year period. Plaintiff averred that before she engaged in this gifting campaign, she consulted with Hourihan's certified public accountant, attorney, and investment advisors. She specifically noted that she sought the advice of her own attorney who told her she "possessed the requisite authority to proceed to gift without court approval." She also emphasized that based on this legal guidance and having "previously been vested with the authority to gift . . . by my Aunt's Power of Attorney, my reliance upon this advice was reasonable under the circumstances."

II.

Whether a court appointed guardian may distribute gifts to a ward's intended beneficiaries is a question of law. Thus, we are not bound by the trial court's interpretation of the law and the legal consequences that flow from established facts. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We review the General Equity Part's decision de novo. Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016).

The outcome of this appeal turns on the application of N.J.S.A. 3B:12-58, which provides:

[i]f the estate is ample to provide for the purposes implicit in the distributions authorized by this article, a guardian for the estate of an incapacitated person may apply to the court for authority to make gifts to charity and other objects as the ward might have been expected to make.

Also included in this statutory scheme is N.J.S.A. 3B:12-50, which provides:

[t]he court may exercise, or direct the exercise of, or release the powers of appointment of which the ward is donee, to renounce interests, to make gifts in trust or otherwise, or to change beneficiaries under insurance and annuity policies, only if satisfied, after notice and hearing, that it is in the best interests of the ward.

The Supreme Court construed the application of these statutes in In re Keri, in which Chief Justice Poritz, writing for the Court, explained:

[i]n short, when managing the estates of incompetent persons, including the exercise of the power to make gifts, our courts must find that the proposed action is in "the best interests of the ward," N.J.S.A. 3B:12-50, and that any gifts proposed are such "as the ward might have been expected to make," N.J.S.A. 3B:12-58. Together, those statutory provisions incorporate and reconcile the best interests standard with the common law equitable doctrine of substituted judgment. Only when the estate contains the resources necessary for the benefit of the ward (best interests), may the guardian make gifts "in the same manner as the incompetent would if able to function at full capacity" (substituted judgment).

[181 N.J. 50, 57-58 (2004) (quoting In re Labis, 314 N.J. Super. 140, 146 (App. Div. 1998)).]

To determine whether the statutory mandates of N.J.S.A. 3B:12-50 and N.J.S.A. 3B:12-58 have been satisfied, our courts have applied the five-factor test, first articulated by then Chancery Division Judge Samuel Allcorn, Jr.,[1] in In re Trott, 118 N.J. Super. 436, 442-44 (Ch. Div. 1972), and later adopted by our Supreme Court in Keri, 181 N.J. at 59. That test requires the guardian to consider the following five factors:

> (1) the mental and physical condition of the incompetent are such that the possibility of her restoration to competency is virtually nonexistent; (2) the assets of the estate of the incompetent remaining after the consummation of the proposed gifts are such that, in the light of her life expectancy and her present condition of health, they are more than adequate to meet all of her needs in the style and comfort in which she now is (and since the onset of her incompetency has been) maintained, giving due consideration to all normal contingencies; (3) the donees constitute the natural objects of the bounty of the incompetent by any standard . . . ; (4) the transfer will benefit and advantage the estate of the incompetent by a reduction of death taxes; (5) there is no substantial evidence that the incompetent, as a reasonably prudent person, would, if competent, not make the gifts proposed in order to effectuate a saving of death taxes.
>
> [Keri, 181 N.J. at 59 (alteration in original) (quoting Trott, 118 N.J. Super. at 442-44).]

---

[1] Chief Justice Weintraub assigned Judge Allcorn to the Appellate Division in 1972. Judge Allcorn was Presiding Judge of the Appellate Division from 1977 until he retired in 1982.

In <u>Keri</u>, the petitioner sought guardianship of his mother and her estate and approval of his proposed Medicaid spend-down plan. <u>Id.</u> at 55. This estate planning technique transfers the assets of the incapacitated person so that she becomes eligible for Medicaid prior to exhausting all of her monetary resources. The petitioner's mother in <u>Keri</u> suffered from a form of irreversible dementia. <u>Id.</u> at 54. When the petitioner sought guardianship, his mother's net worth was $170,000, which was the approximate value of her home. <u>Id.</u> at 54-55. Her monthly nursing home expenses were $6,500, while her monthly income was $1,575.45. <u>Id.</u> at 55.

Based on this negative disparity between assets and expenses, the petitioner determined his mother would need $4,924.55 per month to pay for the nursing home. <u>Ibid.</u> Taking into account the sixteen-month period of Medicaid ineligibility that would be triggered by the transfer, the petitioner concluded his mother would need approximately $78,000 to pay her nursing home bills and he proposed to transfer $46,000 to himself and his brother. <u>Ibid.</u>; <u>see</u> 42 U.S.C § 1396p(c); N.J.A.C. 10:71-4.10(a). Both the trial court and the Appellate Division rejected the petitioner's proposal. 181 N.J. at 56.

The Supreme Court reversed. <u>Id.</u> at 69. Acknowledging the statutory scheme adopted by the Legislature in N.J.S.A. 3B:12-36 to -64, the Court held:

> There is no reason why an individual, simply because he happens to be a ward, should be deprived of the privilege of making an intelligent commonsense decision in the area of estate planning, and in that way forced into favoring the taxing authorities over the best interests of his estate.
>
> [Id. at 58 (quoting Strange v. Powers, 358 Mass. 126, 133 (1970)).]

The approach the Court approved in Keri applies with equal force here. The first Trott criterion is satisfied here because it is indisputable that Hourihan suffers from Alzheimer's and other neurological impediments which are irreversible. The second Trott criterion is likewise satisfied because the record shows Hourihan's assets are more than sufficient to maintain her accustomed and necessary level of care.

The third Trott criterion requires that the gifts plaintiff made go to Hourihan's natural bounty. Keri, 181 N.J. at 59. Gunyan and Daly are named in Hourihan's Will, and they are her niece and niece-in-law, respectively. Black's Law Dictionary defines a natural object as "[a] person likely to receive a portion of another person's estate based on the nature and circumstances of their relationship." Black's Law Dictionary 1049 (7th ed. 1999). Thus, the gifts to Gunyan and Daly were to Hourihan's natural bounty.

However, as the General Equity judge correctly recognized here, the gifts plaintiff made to her daughters, her son-in-law, and her husband do not satisfy the third Trott criterion. A plain application of the legal definition of natural object makes clear that these individuals do not qualify as Hourihan's natural bounty because they would only receive a share of the estate if plaintiff predeceased them.

The fourth Trott criterion is satisfied because the gifts will reduce the payment of estate taxes upon Hourihan's death. The transfers will save $72,000, provided Hourihan survives the three-year look back period. N.J.S.A. 54:34-1. The fifth Trott criterion is also satisfied because there is no substantial evidence that Hourihan would rather have her assets go to the government in the form of taxes than her heirs. Indeed, there is a presumption that a reasonable person would rather leave money to her heirs, than to see it go to the government. Keri, 181 N.J. at 63. Finally, in our view, the General Equity judge correctly relied on Hourihan's power of attorney to limit plaintiff's gifts to $14,000.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1289-18T4