J-A08047-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.C.B., AN INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: JULIE C. BEHRNDT | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2397 EDA 2025 |

Appeal from the Order Entered August 19, 2025
In the Court of Common Pleas of Chester County Orphans' Court at
No(s): 1524-0484

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and KING, J.

MEMORANDUM BY LAZARUS, P.J.:  **FILED MAY 26, 2026**

Julie C. Behrndt, guardian of the person and estate of J.C.B., an incapacitated person, appeals from the order, entered in the Court of Common Pleas of Chester County, Orphans' Court Division, denying her petition to authorize a medical assistance spend-down and payment of attorney's fees. After careful review, we affirm.

By final order dated May 29, 2024, the Honorable John L. Hall declared J.C.B. to be an incapacitated person as a result of his diagnosis of dementia and appointed his daughter, Behrndt ("Guardian"), as plenary guardian of his estate and person.  The final order provided, inter alia, that "[t]he Guardian(s) of the Estate shall take all actions necessary to obtain and/or maintain medical insurance for [J.C.B.], including under the Medical Assistance Program, **if applicable**."  Final Order, 5/29/24, at 4 (emphasis added).  Prior to signing

the order, Judge Hall crossed out a paragraph in the draft order submitted by Guardian, which read as follows:

> The Guardian(s) of the Estate shall engage in medical assistance planning as authorized by federal law and the laws of the Commonwealth of Pennsylvania, with the assistance of a Certified Elder Law Attorney.  In so doing, to expend principal, without further review of the court, only as needed to qualify for medical assistance long-term care.  Proof of all such expenditures of principal must be verified to the County Assistance Office.

*Id.* at 4 (crossed out by court).

On May 28, 2025, Guardian filed a "Petition to Authorize Medical Assistance Spend[-]Down and Payment of Attorney's Fees."  In the petition, Guardian averred that J.C.B. was not currently on medical assistance and that Guardian wished to apply for assistance on J.C.B.'s behalf.  *See* Petition, 5/28/25, at ¶¶ 7-8.  Guardian alleged that, in addition to a 50% interest in a property located at 581 Rosehill Drive, Narvon, Lancaster County,[1] J.C.B.'s assets consisted of two Truist Bank accounts collectively valued at approximately $260,000.00.  *Id.* at ¶ 12.  Guardian averred that J.C.B.'s monthly income consisted of Social Security benefits in the amount of $1,860.00 per month and VA Agent Orange survivor benefits in the amount of $1,395.93 per month.  *Id.* at ¶ 13.

_____

[1] At the hearing on Guardian's petition, Guardian's counsel indicated that Guardian is currently engaged in mediation of a partition action over the property with J.C.B.'s co-owner, his ex-girlfriend.  Counsel indicated that both parties had obtained appraisals for the property; Guardian's appraiser provided an estimated value of $430,000.00, while the co-owner's appraiser came in at $376,000.00.

In support of her request, Guardian averred that J.C.B.'s resources are in excess of the medical assistance allowance and, as a result, he would not qualify for medical assistance "due to being over[-]resourced." *Id.* at ¶ 16. Guardian alleged:

> If [Guardian] is not authorized to create a spend[-]down plan, [J.C.B.[2]] will have to continue to pay privately out-of-pocket for his nursing home expenses, which would be an injustice and would treat him differently than a person with capacity who could choose to hire an attorney and do the necessary spend[-]down to qualify for Medical Assistance.

*Id.* at ¶ 18.

The Orphans' Court held a hearing on July 29, 2025, at which counsel indicated that, if the court approved the requested spend-down, Guardian intended to increase J.C.B.'s burial reserve to the limit of approximately $35,000.00 and "engag[e] in gifting," with J.C.B. retaining the maximum resource allowance of $2,400.00. N.T. Hearing, 7/29/25, at 8-9. Counsel explained the gifting plan as follows:

> MS. SEACE: So[,] if your Honor can turn the court's attention to what's in the boxes at the bottom of page 1 [of the proposed gifting breakdown, marked as Exhibit P-1], what we're proposing is to establish a single premium immediate annuity to fund with the amount of $109,000.[00.] And what that's going to do is cover an eight[-]month penalty, and we would be gifting the rest. The approximate amount of the gift would be $106,700.[00.]

---

[2] Perplexingly, Guardian refers to J.C.B. throughout the petition as "Respondent," despite the fact that the Orphans' Court has deemed him to be "totally impaired," *see* Final Order, 5/29/24, at 1, and, thus, "totally unable to manage his financial resources[.]" 20 Pa.C.S.A. § 5501 (defining "incapacitated person").

THE COURT:  The gift is to whom?

MS. SEACE:  It would be to [Guardian].

THE COURT:  For how much?

MS. SEACE:  $106,770[.00].

*Id.* at 9 (unnecessary capitalization omitted).

On August 19, 2025, the Orphans' Court entered an order (1) denying Guardian's petition for spend-down, (2) appointing a guardian ad litem to "investigate [Guardian's] past and future use of [J.C.B.'s] assets and ensure that they have been, and will be, used exclusively for his care and maintenance," and (3) directing that all counsel fees associated with the petition be paid by the Guardian.  Order, 8/19/25, at 1; n.2.  In denying the petition, the court noted Guardian's intent to disperse approximately 99% of J.C.B.'s currently available assets, leaving him with "approximately $2,400[.00] and provid[ing] him with no more care or benefit than he currently receives."  *Id.* at n.1.  The court further noted that Guardian's spend-down plan violates the medical assistance requirement that an applicant "take all reasonable steps to obtain and make available resources to which he is, or may be, entitled unless he can show good cause for not doing so."  *Id.*, quoting 55 Pa.Code § 178.1(g).  Additionally, the court noted the following:

> [Guardian] also requests the court to ignore the requirement of the [Probate,] Estate[,] and Fiduciaries [("PEF")] Code that the court only approve gifting of an incapacitated person's assets when the court is satisfied that there are excess assets of the incapacitated person "which are not required for the maintenance, support[] and wellbeing of the incapacitated person."  20

- 4 -

Pa.C.S.[A.] § 5536(b). Even if [J.C.B.] had sufficient assets to afford such an expensive gift to his daughter, the court would need to further ignore the statutory requirement that such gifting only be authorized to minimize "current or prospective taxes" or accomplish "a lifetime giving pattern." [*Id.*] Opposite of minimizing taxes, [Guardian's] proposal incurs huge governmental payments which approximate tax penalties.

Order, 8/19/25, at n.1. The court opined that, if it were to permit Guardian to implement her spend-down plan, it would "create a precedent for family members empowered by guardianships to take from those similarly incapacitated, and thrust upon the public the needlessly impoverished, including those with unlimited financial means." *Id.*

Guardian filed a motion for reconsideration, which the Orphans' Court denied, followed by a timely notice of appeal. Both Guardian and the Orphans' Court have complied with Pa.R.A.P. 1925. Guardian raises the following claims for our review:

1. Did the Orphans' Court abuse its discretion and commit an error of law in not applying federal law, state law, and case law supporting the ability of guardians to spend[ ]down assets of incapacitated persons and to make reasonable decisions on behalf of incapacitated persons?

2. Did the Orphans' Court abuse its discretion and make an error of law in issuing an order which contradicts the final order appointing [G]uardian?[3]

---

[3] Although Guardian raises this as an issue, the argument set forth under the heading "Guardian's Duty to Obtain Medical Insurance Under Final Order" contains no argument directly addressing that claim. Thus, the claim is waived. *See* Pa.R.A.P. 2119. In any event, the final order does not require that Guardian qualify J.C.B. for Medicaid; it simply directs that she "take all actions necessary to obtain and/or maintain medical insurance for [J.C.B.], including under the Medical Assistance Program, **if applicable**." Final Order, 5/29/24, at 4 (emphasis added).

- 5 -

3. Did the Orphans' Court abuse its discretion and make an error of law in issuing an order that denies the incapacitated person equal protection by forbidding him the opportunity to engage in Medicaid planning like a competent person can do?

Brief of Appellant, at 8 (unnecessary capitalization omitted).[4]

When an appellant challenges a decree entered by the [O]rphans' [C]ourt, our standard of review requires that we be deferential to the findings of the [O]rphans' [C]ourt.

[We] must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [O]rphans' [C]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of

_____

[4] Pennsylvania Rule of Appellate Procedure requires that

[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part— in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation to authorities as are deemed pertinent.

Pa.R.A.P. 2119(a). We note with displeasure that the argument section of Guardian's brief is divided into five sections that in no way correspond to the three issues raised in the statement of questions involved. "This Court has held that the rules of appellate procedure are mandatory, not directing[,] and it is within our discretion to dismiss an appeal when the rules of appellate procedure are violated." *Jacobs v. Jacobs*, 884 A.2d 301, 305 (Pa. Super. 2005) (citation and quotation marks omitted). "However, if the failure to comply with the rules of appellate procedure does not impede review of the issues or prejudice the parties, we will address the merits of the appeal." *Id.* Here, we conclude that, while Guardian's brief is somewhat disjointed, rambling, and lacking legal support, Guardian's failure to comply with the rules does not impede our review to such an extent that we are unable to address the merits of the instant appeal. We nevertheless remind counsel that conformance with the appellate rules is mandatory and failure to comply may result in the dismissal of future appeals.

law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Schwartz*, 275 A.3d 1032, 1033–34 (Pa. Super. 2022), quoting *In re Staico*, 143 A.3d 983, 987 (Pa. Super. 2016).

Relevant to this appeal, we observe the following:

A fiduciary duty is the highest duty implied by law. *Miller v. Keystone Ins. Co.*, [] 636 A.2d 1109, 1116 ([Pa.] 1994) (Cappy, J., dissenting). A fiduciary duty requires a party to act with the utmost good faith in furthering and advancing the other person's interests[.] *See Basile v. H & R Block, Inc.*, [] 761 A.2d 1115, 1120 ([Pa.] 2000); *Young v. Kaye*, [] 279 A.2d 759, 763 ([Pa.] 1971) ("When the relationship between persons is one of trust and confidence, the party in whom the trust and confidence are reposed must act with scrupulous fairness and good faith in his dealings with the other and refrain from using his position to the other's detriment and his own advantage."); *Sylvester v. Beck*, [] 178 A.2d 755, 757 ([Pa.] 1962); *McCown v. Fraser*, [] 192 A. 674, 676–77 ([Pa.] 1937); *In re Null's Estate*, [] 153 A. 137 ([Pa.] 1930)[;] *see also* Black's Law Dictionary (10th ed. 2014) (defining a fiduciary duty as "a duty to act with the highest degree of honesty and loyalty toward another person and in the best interest of the other person"). . . .

In some types of relationships, a fiduciary duty exists as a matter of law. Principal and agent, trustee and cestui que trust, attorney and client, guardian and ward, and partners are recognized examples. *See, e.g.*, *McCown*[, 192 A. at] 676–77[;] *Young*, 279 A.2d at 763. The unique degree of trust and confidence involved in these relationships typically allows for one party to gain easy access to the property or other valuable resources of the other, thus necessitating appropriate legal protections.

*Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 819–20 (Pa. 2017).

Guardianships of incapacitated persons are governed by Chapter 55 of the PEF Code, which vests in the Orphans' Court continuing supervisory authority over guardians and their wards. *See* 20 Pa.C.S.A. §§ 5501-5555;

*see also id.* at § 711(10) (providing for mandatory jurisdiction of Orphans' Court Division over incapacitated persons' estates). In particular, section 5536(a) requires court approval for all expenditures of principal of the guardianship estate. *See* 20 Pa.C.S.A. § 5536(a) (court, for cause shown, may authorize or direct payment of any or all income or principal of estate for care, maintenance, or education of incapacitated person). Section 5536(b) authorizes the court, for good cause shown, to substitute its judgment for that of the incapacitated person with respect to estate planning, including the power to make gifts. *See id.* at 5536(b)(1). However, before doing so, the court must be "satisfied that assets exist which are not required for the maintenance, support[,] and well-being of the incapacitated person." *Id.* at 5536(b). The court is further limited in its discretion insofar as the statute limits gifting to a plan "which results in minimizing current or perspective taxes, or which carries out a lifetime giving pattern." *Id.* To the extent they may be ascertained, the court is required to consider "the testamentary and inter vivos intentions of the incapacitated person[.]" *Id.* Finally, section 5537 grants the court authority to authorize the guardian to create a funeral reserve on behalf of an incapacitated person. *See* 20 Pa.C.S.A. § 5537.

Against this backdrop, we turn to the claims raised by Guardian on appeal. Guardian asserts that the Orphans' Court abused its discretion and erred in not applying federal law, state law, and case law authorizing the spend-down of assets. Guardian asserts that J.C.B. is currently paying for his care privately, in the amount of $18,135.00 per month. *See* Brief of

Appellant, at 18. She claims that, if J.C.B. were to qualify for Medicaid, it would only cost J.C.B. $3,300.00 per month—an amount equivalent to his income. *Id.* This, Guardian claims, would save "his only child," i.e., Guardian, $14,700.00 per month. *Id.* Guardian claims that it would be "wrong to deny [Guardian] the opportunity to engage in Medicaid planning with [J.C.B.'s] funds as he would have if he had to [sic] capacity to do it." *Id.* at 19. Guardian notes that the "specific context for this dispute is [Guardian's] quest for authorization to distribute some of her incapacitated father's assets to herself in the form of a gift[.]" *Id.* at 20.

In support of her "quest," Guardian primarily relies on the non-binding decision of the Supreme Court of New Jersey in *In the Matter of Mildred Keri*, 853 A.2d 909 (N.J. 2004). There, an incompetent's court-appointed legal guardian sought approval for a Medicaid spend-down plan including a payment of $92,000.00 to be shared equally between the guardian and his brother, the sole heirs named in the incompetent's will. An additional $78,000.00 remained from the guardian's sale of the incompetent's home, which amount was earmarked to pay the ward's nursing home bills during the period of Medicaid ineligibility, i.e., the transfer penalty triggered by the transfer for less than fair market value of the $92,000.00 outright payment to the sole heirs. The New Jersey Supreme Court adopted the test set forth in *In re Trott*, 288 A.2d 303 (N.J. Ch.Div. 1972), which requires a guardian seeking to make gifts from the estate of an incompetent to establish five criteria:

(1) the mental and physical condition of the incompetent are such that the possibility of her restoration to competency is virtually nonexistent; (2) the assets of the estate of the incompetent remaining after the consummation of the proposed gifts are such that, in the light of her life expectancy and her present condition of health, they are more than adequate to meet all of her needs in the style and comfort in which she now is (and since the onset of her incompetency has been) maintained, giving due consideration to all normal contingencies; (3) the donees constitute the natural objects of the bounty of the incompetent by any standard . . .; (4) the transfer will benefit and advantage the estate of the incompetent by a reduction of death taxes; (5) there is no substantial evidence that the incompetent, as a reasonably prudent person, would, if competent, not make the gifts proposed in order to effectuate a saving of death taxes.

*In re Keri*, 853 A.2d at 914. The court approved the plan because it did not "interrupt or diminish [the] ward's care, involve[d] transfers to the natural objects of [the] ward's bounty, and [did] not contravene an expressed prior intent or interest." *Id.* at 9.

Guardian argues that "gifting an incapacitated person's assets in such a way as to avoid liability to government agencies is seen as a reasonable estate planning decision, particularly when estate planning documents are in place." Brief of Appellant, at 25. She asserts that, in denying her petition, the Orphans' Court "created a test more restrictive to an incapacitated person's right to gift assets than any limit on transfers enunciated by state and federal Medicaid laws." *Id.* at 26. Guardian posits that "in its apparent concern over the plundering of [J.C.B.'s] estate," the Orphans' Court "is preventing [Guardian] from making reasonable financial decisions that [J.C.B.] almost certainly would have made for himself if he had the capacity." *Id.* at 31. Guardian argues that, were the court to allow her to spend down J.C.B.'s

assets, "there will be no change at all, whatsoever, to the level of care [J.C.B.] receives, particularly since there is no difference in the quality or level of care received through the Medicaid program." *Id.* at 33. In short, Guardian argues that "[g]uardians should be able to use existing state and federal laws in the same way that competent citizens can[.]" *Id.* at 43.

In its Rule 1925(a) opinion, the Orphans' Court explained that, while federal and state medical assistance laws "may be utilized by competent individuals to transfer assets and incur penalties prior to qualifying for medical assistance, . . . the guardian and court have a duty to preserve an incapacitated person's assets." Orphans' Court Opinion, 10/27/25, at 2. The court observed that Guardian "is not seeking to reduce [J.C.B.'s] gross taxable estate at his death by an amount which would produce a net savings. Rather, [Guardian's] plan has nothing to do with preserving his estate while optimizing tax savings . . . and everything to do with optimizing the amount of money she can take from him." *Id.* at 4. The court further noted that Guardian presented no evidence that J.C.B. had carried out a lifetime giving pattern during his capacity. *Id.* The court expressed concern that J.C.B.'s circumstances could change and, "[i]f the 'fiduciary' guardian has already usurped the ward's lifetime savings, the ward would be trapped by unnecessary indigency and unable to enjoy [] care enhancements." *Id.* at 6.

The court rejected Guardian's reliance on *Keri* as both non-binding and unpersuasive. The court observed that the five-criteria standard applied by the New Jersey Supreme Court is "wholly foreign to Pennsylvania." *Id.* at 4.

In particular, the court noted that the fifth criterion—that there is no substantial evidence that the incompetent would, if competent, not make the gifts proposed—has no parallel in Pennsylvania law. *Id.* The court also rejected the applicability of the second criterion—that assets remaining after the proposed gift would be "more than adequate" to meet the incapacitated person's needs—because Pennsylvania law "requires the guardian to use the [ward's] financial resources not just for the least legally acceptable care, but for the most care and maintenance the ward's financial resources can purchase[.]" *Id.* at 5; *see also id.*, quoting *Hambleton's Appeal*, 12 W.N.C. 542 (Pa. 1883) (incapacitated person's "personal comfort and welfare are the prime objects which are to be kept in view, and not the welfare of his next of kin"). Finally, the court observed that the fourth criterion—reduction of death taxes—is not met in this case, as Guardian presented no evidence that the proposed spend-down was intended to, or would, reduce the tax burden on J.C.B.'s estate. Orphans' Court Opinion, 10/27/25, at 7.

The court concluded that Guardian "is mandated to use [J.C.B.'s] property exclusively for [J.C.B.'s] care and maintenance" and Guardian's "attempt to give herself [J.C.B.'s] estate utterly fail[s] to do so[.]" Accordingly, the court denied Guardian's petition.

In light of our deferential standard of review and the record in this matter, we are constrained to affirm the Orphans' Court's order. First and foremost, Guardian did not aver in her petition, much less present evidence at the hearing, that her proposed spend-down scheme would either "result[]

- 12 -

in minimizing current or prospective taxes" or "carr[y] out a lifetime giving pattern" as required under section 5536. Indeed, both the Orphans' Court record and Guardian's appellate brief are devoid of any evidence or argument that the proposed spend-down would in any way benefit J.C.B. or carry out his previously expressed wishes. To the contrary, in her brief, Guardian as much as admits that she seeks primarily to benefit herself, stating that the "specific context for this dispute is [Guardian's] quest for authorization **to distribute some of her incapacitated father's assets to herself in the form of a gift**[.]" Brief of Appellant, at 20. This is a clear breach of her fiduciary duty as guardian of the estate—a duty that "requires a party to act with the utmost good faith in furthering and advancing **the other person's interests**[.]" *Yenchi*, 161 A.3d 819-20 (emphasis added).

Guardian's primary, overarching argument—that an incapacitated person should be able to engage in the same type of medical assistance planning as a fully competent person—is wholly unavailing. This assertion is belied by the very definition of an "incapacitated person," which, pursuant to the PEF Code, is "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is . . . totally unable to manage his financial resources[.]" 20 Pa.C.S.A. § 5501. By definition, an incapacitated person lacks the ability to determine whether or not to engage in medical assistance planning and, thus, the Orphans' Court is empowered to substitute its judgment for such an individual, within the parameters established by statute,

and based on evidence presented by the guardian of the estate. As noted above, Guardian has not cited any precedential Pennsylvania case[5] in support of her position and failed to present any evidence demonstrating that J.C.B. would have made the decision to divest himself of nearly all of his assets in order to benefit her. Although he permanently resides in a nursing facility, J.C.B. could still benefit from his remaining assets. He may still be able to

_____

[5] Guardian cites to **In re Estate of Groff**, 38 Pa. D.&C. 2d 556 (O.C. Montg. 1965), to support her argument. However, as the Orphans' Court aptly points out, that case is non-precedential and "so removed from [Guardian's] evidence and argument, that it provides more support for [the Orphans' Court's] decision than [Guardian's] position." Orphans' Court Opinion, at 3. **Groff**, which was decided prior to the enactment of section 5536, involved a request by a guardian to engage in estate planning on behalf of his ward, whose estate was substantial. The court noted that the guardian had "spent for his ward as many dollars of her income as there could be found ways to spend it, in the exercise of the utmost effort that could be made to provide for her everything that money can buy for a person in her unfortunate condition of mental health." **Id.** at 560. This included not only "the best available private accommodation" and health care, but also "things such as personal television and radio sets and whatever items of tangible personal property that would or might contribute to her comfort and enjoyment in any way." **Id.** Despite these expenditures, the guardianship estate had accumulated a substantial amount of surplus income, and the estate would, upon the ward's death, be subject to taxation in the "top bracket." **Id.** at 563. Thus, to reduce the gross taxable estate at the ward's death, the court authorized the guardian to continue the ward's established pattern of lifetime giving by distributing a portion of the estate's principal to her son, granddaughter, and daughter-in-law. Even accounting for the gifts of principal, the court found that it was "scarcely conceivable that funds . . . could become inadequate to provide the ward every necessity and luxury for the rest of her life, however long she may live." **Id.** at 565.

Conversely, here, Guardian's proposed spend-down would essentially render her ward indigent, dependent on the State for his essential needs, and without any funds of his own to provide for those things that might contribute to his comfort and enjoyment for the remainder of his lifetime.

enjoy outings, special foods, subscriptions to television streaming services, or other similar activities and services, the cost of which would exceed the Medicaid personal needs allowance but which Guardian could provide for him now utilizing his funds.[6]  **See** Orphans' Court Opinion, at 6 n.3 (noting quality of life enhancements often provided by guardians to their wards using assets of guardianship estate).

After review, we can discern no basis to disturb the Orphans' Court's order.  Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/26/2026

---

[6] Pennsylvania's medical assistance law provides for a personal needs allowance for clothing and other personal needs, which is "deducted from a medical assistance-eligible person's gross income . . . for purposes of determining the amount that person must pay toward the cost of skilled health care and intermediate services or intermediate care while residing in a nursing facility."  62 P.S. § 443.8(a).  As of January 1, 2025, the personal needs allowance is $60.00 per month.  **See** Pennsylvania Department of Human Services Operations Memorandum #24-10-02, 10/22/24.