# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0340-19T4

IN THE MATTER OF
P.R.G.,[1] an alleged
incapacitated person.

_____

P.C.B.,

    Intervenor-Appellant.

_____

    Submitted December 9, 2020 – Decided January 13, 2021

    Before Judges Ostrer and Enright.

    On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. P-230753-19.

    Cores & Associates, LLC, attorney for intervenor-appellant (Amy Sara Cores and Marybeth Hershkowitz, on the briefs).

    Archer Law Office, LLC, attorneys for respondent A.N.G. (Chelsea-Lee Hanke, Carl G. Archer, and Eric D. Walstrom, on the brief).

---

[1] We use initials for the parties, to protect the privacy of the alleged victim of domestic violence. R. 1:38-3(d)(10).

Respondent P.R.G. has not filed a brief.

PER CURIAM

Appellant P.C.B. appeals from an August 29, 2019 Chancery Division judgment declaring P.R.G. an incapacitated person, and appointing respondent A.N.G., P.R.G.'s son, as his permanent guardian. We affirm in part, and vacate those portions of the judgment pertaining to the assets and financial records titled solely in P.C.B.'s name.

P.C.B. and P.R.G. purportedly entered into a domestic partnership[2] in New York on June 7, 2005. They lived together in their jointly owned residence until April 4, 2019, when P.C.B. obtained a temporary restraining order against P.R.G.[3] Days later, P.C.B. filed a dissolution complaint in the Family Part and moved for various relief, including the sale of the parties' residence, as well as the appointment of a law guardian and guardian ad litem for P.R.G.[4] The Family

---

[2] A.N.G. contests the legitimacy of the domestic partnership between P.R.G. and P.C.B. A.N.G. alleges his father and P.C.B. were longtime residents of the State of New Jersey and would not have had standing in 2005 to apply for, or to receive, a certificate of domestic partnership in the State of New York.

[3] The record reflects the temporary restraining order was not served on P.R.G., but remains in effect by way of a continuance order under Docket No. FV-15-1590-19.

[4] In October 2019, P.C.B. dismissed her dissolution complaint under Docket No. FM-15-1136-19; A.N.G. subsequently filed a dissolution complaint, under Docket No. FM-15-0680-20, in his capacity as his father's guardian.

A-0340-19T4

Part judge appointed a guardian ad litem for P.R.G., based on the consent of the parties' counsel.

In late June 2019, A.N.G. filed an application in the Probate Part, seeking guardianship of his father. In early July 2019, the Probate judge appointed counsel for P.R.G., and during a hearing on July 9, 2019, the judge designated a temporary guardian for P.R.G. The record reflects P.C.B.'s attorney attended the July 9 hearing and entered an appearance on her behalf. Also on July 9, the Probate judge entered an order which provided, "[t]he court is imposing temporary restraints on the dissipation of any and all assets titled either individually or jointly in the names of [P.R.G. or P.C.B.], except as otherwise stated herein, pending further order from this court or the Family court." P.C.B. did not seek reconsideration of, nor did she appeal from the July 9, 2019 order. Moreover, P.C.B. did not file any substantive pleadings or opposition in the guardianship matter.

Additionally, in a July 16, 2019 certification filed in the pending dissolution action, P.C.B. represented to the court that during the July 9, 2019 hearing, her attorney was

> able to obtain a limited provision in the temporary guardianship order giving this [Family Part] court the authority to act to sell the properties and fix a proper pendente lite order . . . . In light of the fact that the

> guardian in the Probate hearing recommended to the court restraints on **MY ASSETS**, it is essential that this court now properly fix a pendente lite order.

On July 24, 2019, the Family Part judge ordered all motion practice in the Family Part deferred until the Probate matter was resolved. Five days later, P.C.B.'s counsel informed the Family Part judge that she "object[ed] to the delay of the hearing of [P.C.B.'s] motion" in the dissolution action. P.C.B.'s attorney explained that she "appeared during the initial [guardianship] hearing and obtained an order from [the Probate judge] authorizing the [F]amily [P]art court to move forward." Despite this entreaty, no further action was taken on P.C.B.'s pending dissolution motion prior to the conclusion of the guardianship action in August 2019.

It is undisputed P.C.B. received advance notice of the final guardianship hearing date of August 12, 2019. In fact, her attorney sent a letter to the Probate judge on August 9, 2019, advising the court P.C.B. had "no desire to participate in the guardianship action," had "no need to be copied on communications," and had "no intention of appearing at any proceedings - unless this court intends to act against our client." The Probate judge entered the guardianship judgment, without opposition, on August 29, 2019. As noted in her amplification letter, per Rule 2:5-1(b), the Probate judge relied on the final reports of P.R.G.'s court-

4

appointed attorney, <u>see</u> <u>Rule</u> 4:86-4(b)(2), and his temporary guardian, before entering the uncontested guardianship judgment.

In September 2019, P.C.B. requested that we either summarily vacate paragraphs eleven and twenty-two through twenty-nine of the guardianship judgment or stay those paragraphs pending appeal. On October 1, 2019, we denied her requests for emergent relief. Two days later, our Supreme Court denied P.C.B.'s emergent application.

On appeal, P.C.B. does not challenge the Probate court's appointment of a plenary guardian for P.R.G. In fact, she acknowledges P.R.G. suffers from Alzheimer's disease and is incapacitated. However, she contends paragraphs eleven and twenty-two through twenty-nine of the guardianship judgment should be vacated because: (1) she was not a party to the guardianship action and was not given notice or an opportunity to respond in the guardianship matter; (2) the trial court lacked personal and subject matter jurisdiction to enter relief against her as a non-party; and (3) paragraphs eleven, and twenty-two through twenty-nine of the judgment improperly allowed A.N.G. access to the residence she owns with P.R.G., as well as assets and financial records titled solely in her name.

The ability of the Probate Part to appoint a guardian, and confer the court's power to exercise control over a ward's estate and affairs on a guardian, is broad and discretionary. Matter of Mason, 305 N.J. Super. 120, 128-29 (Ch. Div. 1997); see also In re Quinlan, 70 N.J. 10, 44-45 (1976). In recognition of the Probate judge's significant authority, N.J.S.A. 3B:12-36 states, "[i]f a guardian has been appointed as to . . . an incapacitated person, the court shall have full authority over the ward's person and all matters relating thereto." The expansive powers conferred upon the court are delineated under N.J.S.A. 3B:12-49, wherein the statute provides, in part:

> The court has, for the benefit of the ward, the ward's dependents and members of his household, all the powers over the ward's estate and affairs which he could exercise, if present and not under a disability, except the power to make a will, and may confer those powers upon a guardian of an estate. These powers include, but are not limited to, the power to convey or release the ward's present and contingent and expectant interests in real and personal property, including dower and curtesy and any right of survivorship incident to joint tenancy or tenancy by the entirety, . . . to enter into contracts, to create revocable or irrevocable trusts of property of the estate . . . , to exercise the ward's options to purchase securities or other property, to exercise the ward's rights to . . . change beneficiaries under insurance annuity policies and to surrender the policies for their cash value, to exercise the ward's right to an elective share in the estate of the ward's deceased spouse or domestic partner . . . and to engage in

6

A-0340-19T4

planning utilizing public assistance programs consistent with current law.

[N.J.S.A. 3B:12-49 (emphasis added).]

In light of a Probate judge's broad powers, we review a determination made by that judge for an abuse of discretion. Wolosoff v. CSI Liquidating Tr., 205 N.J. Super. 349, 360 (App. Div. 1985). "The exercise of . . . discretion will be interfered with by an appellate tribunal only when the action of the trial court constitutes a clear abuse of that discretion." Salitan v. Magnus, 28 N.J. 20, 26 (1958). A trial court decision will only constitute an abuse of discretion where "the 'decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" United States v. Scurry, 193 N.J. 492, 504 (2008) (alteration in original) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). Nonetheless, challenges to legal conclusions, as well as a trial judge's interpretation of the law are subject to de novo review. Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382-83 (2010).

Rule 4:86-1 to -12 (supported by N.J.S.A. 3B:12-24 to -29), sets forth the procedures to be followed to obtain a judicial determination of an individual's incapacity and to secure the appointment of a guardian for the incapacitated person. The Rule identifies the information that must be set forth in the

complaint and mandates that the complaint be accompanied by an affidavit describing the alleged incapacitated person's real and personal property and its fair market value.  R. 4:86-2(b)(1)(A) and (B).  Further, the Probate court must receive affidavits from either two reputable physicians, or one such physician and one licensed practicing psychologist.  R. 4:86-2(b)(2).  A person is incapacitated if "impaired by reason of mental illness or intellectual disability to the extent that the individual lacks sufficient capacity to govern himself and manage his affairs."  N.J.S.A. 3B:1-2.  If the court is satisfied with the sufficiency of the complaint and supporting affidavits, it will appoint counsel for the alleged incapacitated person, Rule 4:86-4(a)(7), and enter an order fixing a hearing date.  R. 4:86-4(a).

A Probate judge's appointment of a guardian can be for the person or property, or both, of a person found to be incapacitated.  N.J.S.A. 3B:12-25. Upon a determination of incapacity,

> [l]etters of guardianship shall be granted to the spouse or domestic partner as defined in section 3 of P.L.2003, c.246 (C.26:8A-3), if the spouse is living with the incapacitated person as man and wife or as a domestic partner as defined in section 3 of P.L.2003, c.246 (C.26:8A-3) at the time the incapacitation arose, or to the incapacitated person's heirs, or friends.
>
> [N.J.S.A. 3B:12-25.]

If a ward lacks a spouse, domestic partner, heirs or friends, "[l]etters of guardianship shall be granted . . . [as a matter of] first consideration . . . to the Office of the Public Guardian." Ibid.

The role of a guardian of an incapacitated person's estate is largely statutory. In re Guardianship of A.D.L., 208 N.J. Super. 618, 623 (App. Div. 1986). N.J.S.A. 3B:12-36 to -64 prescribe a guardian's powers to manage an incapacitated person's estate. See In re Keri, 181 N.J. 50, 57 (2004). Under this statutory scheme, a guardian of an incapacitated person may:

> expend or distribute so much or all of the income or principal of his ward for the support, maintenance, education, general use and benefit of the ward . . . , in the manner, at the time or times and to the extent that the guardian, in an exercise of a reasonable discretion, deems suitable and proper, taking into account the requirements of the "Prudent Investor Act[.]"
>
> [N.J.S.A. 3B:12-43.]

A guardian must also "take reasonable care of the ward's clothing, furniture, vehicles and other personal effects and, where appropriate, sell or dispose of such effects to meet current needs of the ward[.]" N.J.S.A. 3B:12-57(f)(5). Moreover, under the Prudent Investor Act, N.J.S.A. 3B:20-11.3(a), a guardian has a duty to exercise reasonable care, skill, and caution, when investing or managing a trust or estate's assets. Further, a guardian is authorized

to consent to medical treatment for the ward, and receives money otherwise payable to the ward, to be used for the ward's support. See Matter of Labis, 314 N.J. Super. 140, 147 (App. Div. 1998).

Mindful of these standards, we first address P.C.B.'s due process and jurisdictional arguments. After carefully reviewing the record, we are convinced it belies P.C.B.'s contention she was not a party to the guardianship action and did not have an opportunity to be heard. Indeed, the guardianship complaint specifically identifies her as a party. Additionally, she was served with the complaint as the alleged incapacitated person's domestic partner, consistent with N.J.S.A. 3B:12-25 (stating that letters of guardianship shall be granted to the spouse or domestic partner . . . or to the incapacitated person's heirs, or friends). Further, as the Probate judge noted in her amplified findings, P.C.B.'s attorney had notice of all hearings, pleadings, and reports in the guardianship matter. Also, the record reflects P.C.B.'s attorney entered an appearance in the guardianship action on July 9, 2019. Thereafter, P.C.B.'s attorney represented to the Family Part judge she "appeared during the initial [guardianship] hearing and obtained an order from [the Probate judge] authorizing the [F]amily [P]art court to move forward." Further, following the entry of the July 9, 2019 guardianship order, P.C.B. did not move for

10

reconsideration nor did she appeal from that order, even though the order imposed temporary restraints on the dissipation of assets titled individually or jointly in her name. Accordingly, we are satisfied P.C.B. was afforded due process, and she waived any objection or right to object to jurisdiction over her person in the guardianship action. See Hill v. Warner, Berman & Spitz, P.A., 197 N.J. Super. 152, 167 (App. Div. 1984); see also R. 4:4-6.

P.C.B. next argues the Probate judge erred by imposing "obligations, restraints, [disgorgement], modifying her temporary restraining order and in failing to make findings of fact or conclusions of law." She asserts there was "no legal authority to grant the relief" set forth in paragraphs eleven and twenty-two through twenty-nine of the guardianship judgment.

In determining whether the Probate judge was entitled to address the various financial issues raised before her, we recognize that pursuant to N.J. Const., art. VI, § 3, ¶ 2, the Superior Court "is presumed to have jurisdiction in all causes unless the Legislature has specifically reserved jurisdiction to a court of limited jurisdiction," such as the New Jersey Tax Court. DSC of Newark Enters. v. South Plainfield Borough, 17 N.J. Tax 510, 514 (Tax 1997). Thus, our Constitution "serves one of the important objectives of our . . . judicial system to minimize confusion and waste of judicial effort by requiring that legal

and equitable relief be granted in any cause so that all matters in controversy between the parties may be completely determined." Morris May Realty Corp. v. Bd. of Chosen Freeholders, 18 N.J. 269, 276 (1955).

Accordingly, we are persuaded the Probate judge was empowered to address all issues pertaining to P.R.G.'s incapacity, his real and personal property, and the payment of attorneys' fees and physician's fees associated with the guardianship action. Further, we are convinced the judge's authority included the power to permit A.N.G., as P.R.G.'s guardian, to retrieve P.R.G.'s personal items from the parties' joint residence, just as P.R.G. would have been entitled to retrieve his personal items under the temporary restraining order that issued.

We disagree with the Probate judge, however, regarding those provisions of the guardianship judgment that impacted financial records and assets in P.C.B.'s sole name. As our Constitution explicitly provides:

> [t]he Superior Court shall be divided into an Appellate Division, a Law Division and a Chancery Division, which shall include a family part. Each division shall have such other parts, consist of such number of judges, and hear such causes, as may be provided by rules of the Supreme Court.
>
> [N.J. Const., art. VI, § 3, ¶ 3 (emphasis added).]

12

Rule 5:1-2(a) states that "actions in which the principal claim is unique to and arises out of a family or family-type relationship, including palimony actions, shall be filed and heard in the Chancery Division, Family Part." (Emphasis added).  Because P.C.B.'s palimony claims, as well as claims regarding assets she maintained in her own name during the domestic partnership are "unique to and arising out of a . . . family-type relationship," we are persuaded those claims should have been heard in the Family Part.  This is particularly true since a dissolution matter was pending at the commencement and conclusion of the guardianship action, and the assigned Family Part judge made clear in his July 24, 2019 communication that he would hear the parties' family-type issues once the guardianship matter concluded.

Accordingly, we vacate those portions of paragraphs eleven, twenty-two, twenty-three, twenty-four, twenty-six, and twenty-seven of the guardianship judgment which authorized A.N.G. to seek access to assets, including accounts, in P.C.B.'s sole name, and to obtain financial records titled solely in P.C.B.'s name.  We offer no opinion regarding whether the Family Part judge should order this relief in the dissolution action.  Nonetheless, we are confident the Family Part judge is well equipped to expeditiously resolve any financial and

discovery issues arising from the purported domestic partnership between P.R.G. and P.C.B.

We decline to address P.C.B.'s remaining arguments as they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part; vacated in part and remanded to the Family Part consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0340-19T4